## WESTERN UNION TELEGRAPH COMPANY *v.* TAGGART.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 662. Argued January 16, 17, 1896. — Decided May 18, 1896.

A statute of a State, requiring a telegraph company to pay a tax upon its property within the State, valued at such a proportion of the whole value of its capital stock as the length of its lines within the State bears to the length of all its lines everywhere, deducting a sum equal to the value of its real estate and machinery subject to local taxation within the State, is constitutional and valid, notwithstanding that nothing is in terms directed to be deducted from the valuation, either for the value of its franchises from the United States, or for the value of its real estate and machinery situated and taxed in other States; unless there is something more showing that the system of taxation adopted is oppressive and unconstitutional.

The statute of Indiana of March 6, 1893, c. 171, which directs the state board of tax commissioners to take as the basis of valuation of the property within the State of every telegraph company, incorporated in Indiana or in any other State, the proportion of the value of its whole capital stock which the length of its lines within the State bears to the whole length of all its lines, yet, as construed by the Supreme Court of the State, makes it the duty of the tax commissioners to make such

1

deductions, on account of a greater proportional value of the company's property outside the State, or for any other reason, as to assess its property within the State at its true cash value; and, so construed, is constitutional.

THIS was a bill in equity, filed December 19, 1893, in the Circuit Court of the county of Marion and State of Indiana, by the Western Union Telegraph Company against Thomas Taggart, the auditor of that county, and Sterling R. Holt, its treasurer, and against the auditors and treasurers of other counties of Indiana, to restrain them from apportioning and collecting a tax assessed upon the plaintiff by the board of tax commissioners of the State, under the statute of Indiana of March 6, 1893, c. 171, the material parts of which are copied in the margin.[1] The principal allegations of the bill were as follows:

---

[1] An act supplementary to and amendatory of an act entitled "An act concerning taxation, repealing all laws in conflict therewith, and declaring an emergency," approved March 6, 1891, and providing for the taxation of telegraph, telephone, palace car, sleeping car, drawing-room car, dining car, express and fast freight joint stock associations, companies, copartnerships and corporations transacting business in the State of Indiana, repealing sections 68, 69, 70 and 71 of said act, and all laws in conflict therewith, and declaring an emergency.

SEC. 1. Any joint stock association, company, copartnership or corporation, whether incorporated under the laws of this State or of any other State or of any foreign nation, engaged in transmitting to, from, through, in or across the State of Indiana, telegraphic messages, shall be deemed and held to be a telegraph company; and every such telegraph company shall, annually, between the first day of April and the first day of June, make out and deliver to the auditor of State a statement, verified by the oath of the officer or agent of such company making such statement, with reference to the first day of April next preceding, showing:

First. The total capital stock of such association, company, copartnership or corporation.

Second. The number of shares of capital stock issued and outstanding, and the par or face value of each share.

Third. Its principal place of business.

Fourth. The market value of said shares of stock on the first day of April next preceding, and if such shares have no market value, then the actual value thereof.

Fifth. The real estate, structures, machinery, fixtures and appliances owned by said association, company, copartnership or corporation, and subject to local taxation within the State, and the location and assessed value

That the plaintiff was, and for many years had been, a corporation of the State of New York, and "the owner of a large amount and number of telegraph poles, lines, wires,

---

thereof in each county or township where the same is assessed for local taxation.

Sixth. The specific real estate, together with the permanent improvements thereon, owned by such association, company, copartnership or corporation, situate outside the State of Indiana and not directly used in the conduct of the business, with a specific description of each such piece, where located, the purpose for which the same is used, and the sum at which the same is assessed for taxation in the locality where situated.

Seventh. All mortgages upon the whole or any part of its property, together with the dates and amount thereof.

Eighth. (*a.*) The total length of the lines of said association or company.

(*b.*) The total length of so much of their lines as is outside the State of Indiana.

(*c.*) The length of the lines within each of the counties and townships within the State of Indiana.

SEC. 5. Upon the filing of such statements, the auditor of State shall examine them, and each of them, and if he shall deem the same insufficient, or in case he shall deem that other information is requisite, he shall require such officer to make such other and further statements as said auditor of State may call for. In case of the failure or refusal of any association, company, copartnership or corporation to make out and deliver to the auditor of State any statement or statements required by this act, such association, company, copartnership or corporation shall forfeit and pay to the State of Indiana one hundred dollars for each additional day such report is delayed beyond the first day of June, to be sued and recovered in any proper form of action, in the name of the State of Indiana, on the relation of the auditor of State, and such penalty, when collected, shall be paid into the general fund of the State.

SEC. 6. Upon the meeting of the state board of tax commissioners for the purpose of assessing railroad and other property, said auditor of State shall lay such statements, with such information as may have been furnished him, before said board of tax commissioners, who shall thereupon value and assess the property of each association, company, copartnership or corporation in the manner hereinafter set forth, after examining such statements, and after ascertaining the value of such properties therefrom, and from such other information as they may have or obtain. For that purpose they may require the agents or officers of said association, company, copartnership or corporation to appear before them with such books, papers or statements as they may require; or they may require additional statements to be made to them, and may compel the attendance of witnesses in case they shall deem it necessary to enable them to ascertain the true cash value of such property.

cables, fixtures, instruments, machinery, appliances, apparatus
and real estate, constituting a plant for the transmission and
conveyance of telegraph messages, which said telegraphic
plant extends into and through every State and Territory
of the United States, the Dominion of Canada, and under

SEC. 7. Said state board of tax commissioners shall first ascertain the
true cash value of the entire property owned by said association, company,
copartnership or corporation from said statements or otherwise, for that
purpose taking the aggregate value of all the shares of capital stock, in
case said shares have a market value, and in case they have none, taking
the actual value thereof or of the capital of said association, company,
copartnership or corporation, in whatever manner the same is divided, in
case no shares of capital stock have been issued: Provided, however, that
in case the whole or any portion of the property of such association, com-
pany, copartnership or corporation shall be incumbered by a mortgage or
mortgages, such board shall ascertain the true cash value of such property
by adding to the market value of the aggregate shares of stock, or to the
value of the capital, in case there shall be no such shares, the aggregate
amounts of such mortgage or mortgages, and the result shall be deemed
and treated as the true cash value of the property of such association,
company, copartnership or corporation. Such board of tax commissioners
shall, for the purpose of ascertaining the true cash value of the property
within the State of Indiana, next ascertain, from such statements or other-.
wise, the assessed value for taxation, in the localities where the same is
situated, of the several pieces of real estate situate without the State of
Indiana and not specifically used in the general business of such associa-
tions, companies, copartnerships or corporations, which said assessed values
for taxation shall be by said board deducted from the gross value of the
property as above ascertained. Said state board of tax commissioners
shall next ascertain and assess the true cash value of the property of such
associations, companies, copartnerships or corporations within the State of
Indiana, by taking the proportion of the whole aggregate value of said
associations, companies, copartnerships or corporations, as above ascer-
tained, after deducting the assessed value of such real estate without the
State, which the length of the lines of said associations, companies, copart-
nerships or corporations in the case of telegraph and telephone companies
within the State of Indiana, bears to the total length of the lines thereof;
and in the case of palace, drawing-room, sleeping, dining or chair car com-
panies, the proportion shall be the proportion of such aggregate value,
after such deductions, which the length of the lines within the State, over
which said cars are run, bears to the length of the whole lines over which
said cars are run ; and in the case of express companies, the proportion
shall be the proportion of the whole aggregate value, after such deduc-
tions, which the length of the lines or routes within the State of Indiana,
bears to the whole length of the lines or routes of such·associations, com-

the Atlantic Ocean to England and to Cuba;" and that the plaintiff, by reason of rights under contracts with various persons and corporations in the United States and in other parts of the world, and under letters patent from the United States, and valuable franchises granted by the United States and by New York and other States of the Union, (but not

---

panies, copartnerships or corporations ; and such amount so ascertained shall be deemed and held as the entire value of the property of said associations, companies, copartnerships or corporations within the State of Indiana. From the entire value of the property within the State, so ascertained, there shall be deducted, by said board, the assessed value for taxation of all the real estate, structures, machinery and appliances within the State and subject to local taxation in the counties and townships as hereinbefore described in item No. 5 of sections 1, 2, 3 and 4 of this act ; and the residue of such value so ascertained, after deducting therefrom the assessed value of such local properties, shall be, by said board, assessed to said association.

SEC. 8. Said state board of tax commissioners shall thereupon ascertain the value per mile of the property within the State by dividing the total value, as above ascertained, after deducting the specific properties locally assessed within the State, by the number of miles within the State; and the result shall be deemed and held as the value per mile of the property of such association, company, copartnership or corporation within the State of Indiana.

SEC. 9. Said state board of tax commissioners shall thereupon, for the purpose of determining what amount shall be assessed by it to said association, company, copartnership or corporation in each county in the State through, across, into or over which the line of said association, company, copartnership or corporation extends, multiply the value per mile, as above ascertained by the number of miles in each of such counties, as reported in said statements or as otherwise ascertained, and the result thereof shall be, by said board, certified to the auditor of State, who shall thereupon certify the same to the auditors, respectively, of the several counties through, into, over or across which the lines or routes of said association, company, copartnership or corporation extend; and such auditors shall apportion the amount certified for their counties, respectively, among the several townships into, through, over or across which such lines or routes extend, in proportion to the length of the lines in such townships.

SEC. 10. To enable said county auditors to properly apportion the assessments between the several townships, they are authorized to require the agent of said association or company to report to them, respectively, under oath, the length of the lines in each township; and the auditor shall thereupon add to the value so apportioned the assessed valuation of the real estate, structures, machinery, fixtures and appliances situated in any township, and extend the taxes thereon upon the duplicates as in other cases.

by Indiana,) and by many municipalities in those States, and by the governments of England and of Cuba, was "enabled to do a large and profitable business, by and by means of said telegraphic plant, and not only earn an amount which would be equivalent to rent upon said property, in case the same was owned by another corporation and leased by complainant, but also to make a profit for complainant in addition to said amount so applicable as rent of such telegraphic plant."

That the "portion of said telegraphic plant, situated within said State of Indiana, is of the actual cash value of $686,126, the said cash value being ascertained by taking the cost of original construction, as nearly as the same can be ascertained, and deducting therefrom a sum partially equal to the depreciation of the plant; and could be replaced by an entirely new plant of the same extent and location, and of far more valuable and lasting material, for the sum of $1,226,625."

That the pretended statute of March 6, 1893, was not a law of the State of Indiana, (for reasons not insisted on in this court,) and that on July 11, 1893, the plaintiff, reserving its rights to contest the validity of that statute, filed with the auditor of the State a statement and return, as therein required —a copy of which was annexed, and which included substantially the same objections as were stated in the bill, and showed that the entire mileage of the company was 189,576 miles, 6436 of which were in the State of Indiana; that it had no real estate, machinery and appliances in Indiana subject to local taxation ; that the cost of its real estate in other States was $5,013,326, and the amount of its outstanding mortgage bonds was $1,211,000.

That the state board of tax commissioners on August 21, 1893, made its assessment and valuation of the plaintiff's property in Indiana, deducting the real estate, structures, machinery and apparatus within the State and subject to local taxation, at the sum of $2,297,652, and at the rate of $357 per mile of telegraph line; "and, in fixing said valuation upon complainant's said property in Indiana, acted under and by virtue of the assumed authority of said pretended statute, approved March 6, 1893, and placed upon complainant's said

property additional values, beyond the true cash value of complainant's said property as measured by the cost of replacement of the same, making reasonable allowances for deterioration. by adding values of complainant's business, property and good will, both in and outside of Indiana, and franchises granted by the State of New York, the United States and foreign countries; and in witness thereof caused to be entered upon the official record of said board, required by law to be kept by said board, on said August 21, 1893, the following statement and certificate:

" ' In accordance with the requirements of the act of the general assembly of the State of Indiana, approved March 6, 1893, the state board of tax commissioners, after full consideration, does hereby assess and value telegraph, telephone, palace car, sleeping car, drawing-room car, dining car, express and fast freight joint stock associations, companies, copartnerships and corporations, transacting business in the State of Indiana, which assessment and valuation is as follows, to wit: Assessment and valuation of telegraph and telephone companies in the State of Indiana by the state board of tax commissioners for the year 1893, exclusive of real estate, structures, machinery, fixtures and appliances subject to local taxation within the State.' " The first line under that heading was: "Western Union Telegraph Company. Miles, 6436. Per mile, $357. Total, $2,297,652."

"That the state board of tax commissioners, during its said session in the year 1893, did not attempt to specify or describe the property of complainant, falling within the description of real estate, structures, machinery and appliances subject to local taxation.

"That, in making said assessment, said state board of tax commissioners assumed to take as the basis thereof the value of the entire capital stock of complainant, at a valuation per share based upon the price of the shares of complainant's capital stock dealt in in the stock exchange market of New York City, dividing such aggregate value by the total number of miles of telegraph line of complainant, wherever situated, and both in and outside of Indiana, and thereby obtaining a pretended valuation per mile of the telegraph line of com-

plainant, amounting to the said sum of $357 per mile, which said pretended valuation per mile said board, acting under the authority of said pretended statute, imputed to and imposed upon each mile of the whole number of complainant's telegraph line in Indiana, thereby imputing to and imposing upon the whole telegraph line of complainant in Indiana, which is of the length of 6436 miles, said pretended valuation of $2,297,652, which said pretended valuation is grossly excessive and far beyond the true cash value of complainant's said property in Indiana.

"That said state board of tax commissioners, in reaching said valuation of complainant's said property in Indiana, did not consider and assess the value of the property of complainant situated in Indiana, otherwise than by pursuing the requirements of said pretended statute.

"That neither on April 1, 1893, nor at any time prior or subsequent thereto, was there any market value for all the shares of the capital stock of complainant;" that the whole number of shares was 948,200, of the par value of $100 each; that the number of shares sold or speculated in on April 1, 1893, on the New York stock exchange, was 1168 shares, at the average price of $94.50, and only a part of those was actually delivered; and that the price so obtained did not fairly represent the actual value of the plaintiff's property.

"That any price at which any or all shares of complainant might be sold, by any holder or holders thereof, whether such price be calculated upon any market value or upon actual value, includes, amongst other things, a consideration of franchises of great value owned or exercised by complainant, granted by the State of New York, by the United States, by Canada, by Great Britain, by Cuba, and by other States, countries and municipalities; a consideration of complainant's good will, its past earnings from every source, its probable future earnings from every source, the business ability, enterprise and skill of the present managers of complainant's business, the probable continuance of business ability, enterprise and skill in the future management of complainant's business; the contract and other relations of complainant to powerful

railroad, telephone and cable companies; a consideration of the real estate of complainant situated in the city of New York, which is of great value, to wit, of the value of $3,500,000, and in the city of Chicago, which is of great value, to wit, of the value of $1,700,000, and of the real estate of complainant of great value, situated in many other States and countries, none of which is situated in the State of Indiana; as well as the consideration of the actual value of all complainant's telegraph lines, poles, wires, cables, conduits, instruments, appliances and office furniture, including that which is situated in Indiana and taxable by the State of Indiana.

"That, in estimating such market or actual value of the shares of the stock of complainant, the values of said intangible franchises, rights, contracts, earnings, business, business ability, enterprise, skill and management and good will, and of all said real and personal estate of complainant, are blended so as to render it impossible to separate and distinguish the portions of value applicable to any or each of said elements of value of said shares."

That the plaintiff was the owner of many thousand miles of telegraph in the States of Massachusetts, New York, Pennsylvania and New Jersey, and in other densely populated portions of the United States, of the cost and value of $2500 per mile on the average, and requiring great expenditures for the maintenance thereof; of many thousand miles of cable under the high seas, of the cost and value of $3500 per mile on the average; and of many thousands of miles of lines of telegraph in uninhabited or sparsely inhabited portions of the United States and Mexico, which, by reason of the great cost of transportation of material, and cost of maintenance, were of great cost and value; that all the plaintiff's lines in the State of Indiana, by reason of the proximity to supplies of material, and the very cheap transportation, were of minimum value, as compared with the plaintiff's lines situated elsewhere; and that, by reason of these facts, the average mile of the telegraph line of the plaintiff within Indiana was of the value of forty per cent of the value of the average mile of the whole line situated outside of the State of Indiana, reckoning such

value upon the cost of construction and maintenance, and making allowance for. deterioration.

That sixty-six per cent of the plaintiff's whole business in transmitting telegraphic messages, and sixty per cent of its business in the State of Indiana, was interstate and international business; and that the average net earnings of a mile of the line in the State of Indiana amounted to only sixty per cent of the net earnings of. the average mile of its line outside of the State.

. That the plaintiff duly accepted the provisions of the act of Congress of July 24, 1866, c. 230, now sections 5263–5269 of the Revised Statutes; that all the telegraph lines owned or operated by the plaintiff in Indiana were constructed upon railroads, streets and other post roads of the United States, and thereby the plaintiff was an agent of the government of the United States in the transmission of intelligence by electricity ; and that the Statute of Indiana of March 6, 1893, and the assessment and valuation of the plaintiff's property under that statute, rendered its property in Indiana substantially valueless, and prevented it from performing its obligations to the United States.

That much of the plaintiff's capital stock, to the amount of $7,633,230, " is invested in and represented by the capital stock and bonds of other telegraph and telephone corporations, whose telegraph or telephone plants are leased to or operated by complainant, which said telegraph and telephone corporations possess no property in the State of Indiana, and do not own or use any franchise granted by the State of Indiana, and are wholly situated outside of the State of Indiana.

" That the attempted and pretended valuation of complainant's said property by said state board of tax commissioners, in manner aforesaid, upon the value of complainant's shares of stock, whether said board pretended to value said property upon a basis which included the consideration or estimation of market value or actual value of the shares of stock of complainant, necessarily includes, and does in fact include, values which are no part of the true cash value of the property of complainant in Indiana; but .are imputed. and fictitious values

distributed to complainant's said property in Indiana, as portions of the value of the business, business ability, enterprise and skill of complainant, of the real and personal estate owned and leased by complainant and outside of the State of Indiana, and of complainant's franchises granted by States other than Indiana and municipalities outside of Indiana, and by the United States and by foreign States and nations, and of the contract relations and other relations existing between complainant and other corporations, all of which said property, things in action, and other things and matters of value, are beyond the jurisdiction of the State of Indiana, whether for the purpose of taxation or for any other purpose."

That the auditor of the State, on September 15, 1893, certified the valuation aforesaid to the auditors of the counties through which the plaintiff's telegraph lines extended; and that the county auditors were engaged in apportioning and distributing the same among the townships, and were preparing to deliver tax duplicates to the county treasurers, to the end that they might collect the tax from the plaintiff.

That the statute of 1893, c. 171, was contrary to the constitution of Indiana in various particulars pointed out, (but not now relied on,) and that this statute, and the assessment and valuation of the plaintiff's property by the state board of tax commissioners in compliance with its provisions, levied a tax upon interstate and international commerce, in violation of article 1, section 8, of the Constitution of the United States, and deprived the plaintiff of its property without due process of law, and denied it the equal protection of the laws, in violation of the Fourteenth Amendment of the Constitution.

The defendants demurred generally to the bill. The court sustained the demurrer, and, the plaintiff declining to amend its bill, entered final judgment for the defendants. The plaintiff appealed to the Supreme Court of Indiana, which affirmed the judgment. 141 Indiana, 281. The plaintiff thereupon sued out this writ of error.

*Mr. John F. Dillon*, (with whom was *Mr. Rush Taggart* on the brief,) for plaintiff in error.

I. In the method of valuation prescribed by the statute and in the assessment now in question actually made by the board of assessors pursuant to the statute, there was necessarily included a valuation of the Federal franchises of the plaintiff in error, which Federal franchises, or the value thereof, are not taxable by the State of Indiana.

In discussing this point *Mr. Dillon* cited and commented on *California* v. *Central Pacific Railroad Co.*, 127 U. S. 1; *Pittsburgh &c. Railway* v. *Backus*, 154 U. S. 421, 439; *The Delaware Railroad Tax*, 18 Wall. 206; *State Railroad Tax cases*, 92 U. S. 575; *People* v. *Coleman*, 126 N. Y. 433; *People* v. *Barker*, 146 N. Y. 304; *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530; 141 U. S. 40. With reference to the last two cases he said:

We distinguish the case at bar from the Massachusetts case on these two grounds: (1) That in the case at the bar it is expressly averred that the valuation complained of in the bill of complaint did include the value of the Federal and other franchises of the company; and, (2) That, by so including them, an unfair result was obtained, since the result was to value and assess property of the company in Indiana far beyond its actual and real value under any of the tests which have been suggested by this court.

If a tax levied by a State is upon a Federal "franchise" it is settled that it is unconstitutional. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Osborn* v. *Bank of the United States*, 9 Wheat. 738; *Brown* v. *Maryland*, 12 Wheat. 419; *Weston* v. *Charleston*, 2 Pet. 449; *California* v. *Central Pacific Railroad*, 127 U. S. 1. Nor is the Western Union Telegraph Company, having accepted the act of Congress of July 24, 1866, subject to have imposed on it a license tax by the State of Indiana. *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *Western Union Tel. Co.* v. *Alabama*, 132 U. S. 472; *Lyng* v. *Michigan*, 135 Id. 161. A State may tax the "property" of a corporation having a Federal franchise, but it cannot tax the "Federal franchises" of a corporation. *California* v. *Central Pacific Railroad*, 127 U. S. 1.

That the Western Union company accepted the act of

Congress of July 24, 1866, and thus acquired Federal fran-chises of a valuable character for which it yields to the United States a large consideration and subjects itself to great burdens, is an admitted fact upon the record.

That the value of this franchise was included by the State of Indiana in the valuation and assessment of the property of the Western Union Telegraph Company in the case at the bar is admitted of record. That such valuation largely exceeded the value of the property of the Western Union company situate within the State of Indiana is also admitted on the record.

The tax in the case at the bar is not a tax merely upon the "property," but includes a tax upon the Federal and other "franchises" of the telegraph company engaged in interstate commerce, which franchises are not derived from the State of Indiana, and are not taxable by it.

If you include in the gross valuation for assessment purposes the value of such franchises (which in this case it is admitted of record was done), can it be said that such franchises are not taxed? If such a doctrine be established by this court, it arms the States with the power to destroy the instrumentalities of interstate commerce, and they will exercise it as they have already begun to do without scruple and without limit.

II. The necessary effect of the method of taxation adopted by the taxing authorities of Indiana in this case was to bring within the operation of the statute of Indiana property, or the value of property, of the telegraph company outside of the State of Indiana. Such taxation cannot be deemed due proc-ess of law under the Fourteenth Amendment to the Constitu-tion of the United States; and, therefore, the statute requiring or permitting such a mode of assessment, and the assessment made under it must be treated as unconstitutional and void.

III. The mode prescribed or allowed by the statute, sec-tion 7 of the act of March 9, 1893, viz., the market value of its shares, etc., for ascertaining the true cash valuation of the entire property of the plaintiff in error, which mode it is admitted on the record was followed by the tax commis-sioners of Indiana in arriving at the assessment now com-plained of, is a mode under which, as applied to the plaintiff

in error, it is legally impossible that it should result in ascertaining the true cash value of the property of the plaintiff in error within the State of Indiana, and therefore such assessment upon the plaintiff in error (which is a Federal agency and engaged in interstate commerce), is in violation of the commerce clause of the Constitution and of the Fourteenth Amendment thereto.

*Mr. Alpheus H. Snow, Mr. Willard Brown* and *Mr. Charles W. Wells* filed a brief for plaintiff in error.

*Mr. William A. Ketcham,* Attorney General of the State of Indiana, (with whom was *Mr. Alonzo Greene Smith* on the brief,) and *Mr. Attorney General* for defendants in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

It is not and cannot be doubted that each State of the Union may tax all property, real and personal, within its borders, belonging to persons or corporations, although employed in interstate or foreign commerce, provided the rights and powers of the National Government are not interfered with. *Delaware Railroad Tax case,* 18 Wall. 206, 232; *Telegraph Co.* v. *Texas,* 105 U. S. 460, 464; *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Marye* v. *Baltimore & Ohio Railroad,* 127 U. S. 117, 123, 124; *Leloup* v. *Mobile,* 127 U. S. 640, 649; *Pullman's Co.* v. *Pennsylvania,* 141 U. S. 18; *Cleveland &c. Railway* v. *Backus,* 154 U. S. 439, 445.

The principal grounds upon which the plaintiff contends that the statute of Indiana of March 6, 1893, c. 171, is unconstitutional, and the valuation and assessment of the plaintiff's property under it invalid, are that they necessarily included a taxation of franchises granted to the plaintiff by the United States, as well as of the plaintiff's property outside of the State of Indiana, neither of which was subject to taxation in that State; and also, by taking the market value of shares of the plaintiff's stock, in fixing the valuation of the entire prop-

erty of the plaintiff, and by apportioning that valuation according to the proportion thereof within the State of Indiana, of all the plaintiff's telegraph lines everywhere, adopted an arbitrary rule, and imposed an unlawful burden upon interstate commerce.

But in each of these respects the case presented by this record appears to us to be governed by previous decisions of this court. The argument for the plaintiffs in error, in effect, if not in express words, invites the court to modify or to overrule those decisions. It becomes important, therefore, to state somewhat fully the scope and extent of those decisions, the reasons on which they proceeded, and the provisions of the statutes thereby construed.

The statutes of Massachusetts, the constitutionality of which was attacked by the present plaintiff, and upheld by this court, in the two cases of *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530, and 141 U. S. 40, were undistinguishable in any material respect from the statute of Indiana now before us, and may, as suggested at the bar, have been the model upon which this statute was framed.

The material provisions of those statutes of Massachusetts were as follows: Every corporation, chartered or organized in Massachusetts or elsewhere, and owning a telegraph line in Massachusetts, was required to return annually to the tax commissioner of the State a statement of the amount of its capital stock, the par value and market value of its shares, the locality and value of its real estate and machinery subject to local taxation within the State, the whole length of its lines, and the length of so much of its lines as was within the State. The tax commissioner was required to ascertain the true market value of its shares, and to estimate the fair cash valuation of all the shares constituting its capital stock; and the corporation was required to pay annually "a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stocks," as so determined by the tax commissioner; deducting, however, from that valuation, such proportion thereof as was proportional to the length of that part of its line lying without the State, and also an

amount equal to the value, as determined by the tax commissioner, of its real estate and machinery within the State and subject to local taxation therein. Mass. Pub. Stat. c. 13, §§ 38–40, 42.

In the first of the Massachusetts cases, Mr. Justice Miller, delivering the opinion of the court, said that " the main ground, on which the telegraph company resisted the payment of the tax alleged to be due," was that it was a violation of the rights conferred upon the company by the provisions (which had been accepted by the company) of the act of Congress of July 24, 1866, c. 230, reënacted in section 5263 of the Revised Statutes, by which it was enacted that any telegraph company organized under the laws of any State, should " have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States," " and over, under or across the navigable streams or waters of the United States." 14 Stat. 221; Rev. Stat. § 5263. The argument then made by counsel and the decision of the court upon this point are shown by the following passages in the opinion :

" The argument is very much pressed, that it is a tax upon the franchise of the company, which franchise, being derived from the United States by virtue of the statute above recited, cannot be taxed by a State; and counsel for appellant occasionally speak of the tax authorized by the law of Massachusetts upon this as well as all other corporations doing business within its territory, whether organized under its laws or not, as a tax upon their franchises. But by whatever name it may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation. The laws of that Commonwealth attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein." 125 U. S. 546, 547.

" While the State could not interfere, by any specific statute, to prevent a corporation from placing its lines along these post

roads, or stop the use of them after they were placed there, nevertheless the company, receiving the benefit of the laws of the State for the protection of its property and its rights, is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State, and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support." 125 U. S. 548.

"The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts; and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by section 5263 of the Revised Statutes, or by the commerce clause of the Constitution." 125 U. S. 552. See also *Reagan* v. *Mercantile Trust Co.*, 154 U. S. 413, 416, 417; *Central Pacific Railroad* v. *California*, 162 U. S. 91, 123.

It was further argued in that case, that the tax was excessive and invalid, because, in ascertaining the whole valuation of the stock, no deduction was made on account of the value of real estate and machinery situated, and subject to local taxation, outside of the State of Massachusetts; although it appeared that the company owned lands and buildings outside of the State, the cost of which was more than $3,000,000, and upon which it had been assessed and had paid taxes of more than $48,000. 125 U. S. 542, 544, 552.

The court, notwithstanding, declared that it did not feel called upon to defend all the items and rules by which the authorities of the State arrived at the taxable value on which its ratio of percentage of taxation should be assessed, or to

hold the tax void because the court might have adopted a different system had it been called upon to accomplish the same result; and decided that the rule adopted to ascertain the amount of the value of the capital engaged in business within the boundaries of the State, on which the tax should be assessed, was not an unfair or an unjust one, and that the details of the method by which this was determined did not exceed the fair range of legislative discretion.   125 U. S. 553.

The same views were affirmed in the second case between the same parties.   141 U. S. 44, 45.

Those decisions clearly establish that a statute of a State, requiring a telegraph company to pay a tax upon its property within the State, valued at such a proportion of the whole value of its capital stock as the length of its lines within the State bears to the length of all its lines everywhere, deducting a sum equal to the value of its real estate and machinery subject to local taxation within the State, is constitutional and valid, notwithstanding that nothing is in terms directed to be deducted from the valuation, either for the value of its franchises from the United States, or for the value of its real estate and machinery situated and taxed in other States; unless there is something more showing than the system of taxation adopted is oppressive and unconstitutional.

We are then brought to a consideration of the statutes of Indiana, as construed by the Supreme Court of the State and by this court.

The statute of Indiana of March 6, 1891, c. 91, repealed previous laws, and established a comprehensive and complete system of taxation.   By § 3, all property within the jurisdiction of the State, not expressly exempted, was declared to be subject to taxation; and by subsequent sections the property of all corporations owning or operating railroads within the State was classified for the purposes of taxation as follows:

By § 78, the "right of way, including the superstructure, main, side or second track, and turnouts, turntables, telegraph poles, wires, instruments and other appurtenances, and the stations and improvements of the railroad company on such right of way" (excepting machinery, fixtures and stationary

engines) were considered real estate, and denominated "railroad track." By § 79, the value of such "railroad track" was taxed in the several counties, townships, cities and towns, in the proportion that the length of the main track therein bore to the whole length of the road in the State, except that the value of the side or second track, and of all turnouts, station houses and other buildings belonging to the railroad, was taxed in the county, township, city or town in which they were situated. By § 80, the movable property belonging to a railroad company was denominated "rolling stock," and considered personal property; and was taxed in the several counties, townships, cities and towns in the proportion that the main track used or operated therein bore to the length of the main track used or operated by the corporation, whether owned by it or not. By § 81, all other personal property, including machinery, fixtures, stationary engines, tools and materials for repairs, was taxed in the county, township, city or town in which it was on the first day of April in each year; and by § 82, all real estate of any railroad company, (other than that denominated "railroad track,") with all improvements thereon, was taxed in the county, township, city or town where it was situated.

Each railroad corporation was required, by § 83, to return annually to the county auditor an inventory of all these kinds of property, except "railroad track;" and, by § 85, to return to the auditor of the State, to be laid before the state board of tax commissioners, a statement showing, among other things, "first, the property denominated 'railroad track,' giving the length of the main and side or second tracks and turnouts, and showing the proportions in each county and township, and the total in the State; second, the rolling stock, whether owned or hired, giving the length of the main track in each county, and the entire length of the road in this State;" and also the amount of its capital stock, and the market value, or if no market value, the actual value of its shares, the total amount of its indebtedness except for current expenses, and the total listed valuation of all its tangible property in the State.

By §§ 129, 137, the state board of tax commissioners was declared not to be bound by these returns; and was required to "appraise and assess all property at its true cash value, as defined by this act, according to their best knowledge and judgment, and so as to equalize the assessment of property throughout the State," and to "assess the railroad property, denominated in this act as 'railroad track' and 'rolling stock,' at its true cash value," and was authorized to examine persons and papers. And by § 130, each member of the board was required to declare, as part of his oath of office, that he would "in no case assess any property at more or less than its true cash value."

This court, at the last term, in several cases, affirming judgments of the Supreme Court of Indiana, held that the statute of 1891 did not, in the case of a railroad partly in that State and partly in another, require that the value of the part in Indiana should be determined absolutely by dividing the whole value upon a mileage basis; but only that the total amount of stock and indebtedness should be taken into consideration in ascertaining the value; and that the statute was constitutional. *Pittsburg &c. Railway* v. *Backus*, 154 U. S. 421, 430, 435, and 133 Indiana, 625; *Indianapolis & Vincennes Railroad* v. *Backus*, 154 U. S. 438, and 133 Indiana, 609; *Cleveland &c. Railway* v. *Backus*, 154 U. S. 439, and 133 Indiana, 513.

In those cases, the objections to the constitutionality of that statute were answered by this court, speaking by Mr. Justice Brewer, as follows:

"It is not to be assumed that a State contemplates the taxation of any property outside its territorial limits, or that its statutes are intended to operate otherwise than upon persons and property within the State. It is not necessary that every section of a tax act should in terms declare the scope of its territorial operation. Before any statute will be held to intend to reach outside property, the language expressing such intention must be clear." 154 U. S. 428.

"It is obvious that the intent of this act was simply to reach the property of the railroad within the State." "No intent to

the contrary can be deduced from the provision requiring the corporation to file a statement of its total stock and indebtedness; for that is one item of testimony fairly to be considered in determining the value of that portion of the property within the State. The stock and the indebtedness represent the property. As said by Mr. Justice Miller in *State Railroad Tax cases*, 92 U. S. 575, 605, 'When you have ascertained the current cash value of the whole funded debt and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock.'" 154 U. S. 428, 429.

"It is not stated, in this statute, that when the value of a road running in two States is ascertained, the value of that within the State of Indiana shall be determined absolutely by dividing the gross value upon a mileage basis; but only that the total amount of stock and indebtedness shall be presented for consideration by the state board. Nevertheless it is ordinarily true that when a railroad consists of a single continuous line, the value of one part is fairly estimated by taking that part of the value of the entire road which is measured by the proportion of the length of the particular part to that of the whole road. This mode of division has been recognized by this court several times as eminently fair." 154 U. S. 430, 431.

In support of the last statement were cited *State Railroad Tax cases*, 92 U. S. 608, 611; *Delaware Railroad Tax case*, 18 Wall. 206; *Erie Railway* v. *Pennsylvania*, 21 Wall. 492; *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Maine* v. *Grand Trunk Railway*, 142 U. S. 217; *Charlotte &c. Railroad* v. *Gibbes*, 142 U. S. 386; *Columbus Southern Railway* v. *Wright*, 151 U. S. 470.

"The true value of a line of railroad is something more than an aggregation of the values of separate parts of it, operated separately. It is the aggregate of those values, plus

that arising from a connected operation of the whole; and each part of the road contributes, not merely the value arising from its independent operation, but its mileage proportion of that flowing from a continuous and connected operation of the whole. This is no denial of the mathematical proposition that the whole is equal to the sum of all its parts; because there is a value created by and resulting from the combined operation of all its parts as one continuous line." 154 U. S. 444.

"Now, when a road runs into two States, each State is entitled to consider, as within its territorial jurisdiction, and subject to the burdens of its taxes, what may perhaps not inaccurately be described as the proportionate share of the value flowing from the operation of the entire mileage as a single continuous road. It is not bound to enter upon a disintegration of values, and attempt to extract from the total value of the entire property that which would exist if the miles of road within the State were operated separately. Take the case of a railroad running from Columbus, Ohio, to Indianapolis, Indiana. Whatever of value there may be resulting from the continuous operation of that road is partly attributable to the portion of the road in Indiana, and partly to that in Ohio; and each State has an equal right to reach after a just proportion of that value, and subject it to its taxing processes. The question is, how can equity be secured between the States; and to that a division of the value of the entire property upon the mileage basis is the legitimate answer. Taking a mileage share of that in Indiana is not taxing property outside of the State." 154 U. S. 444, 445.

"The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value; and if property is taxed at its actual cash value, it is

taxed upon something which is created by the uses to which it is put. In the nature of things, it is practically impossible — at least in respect to railroad property — to divide its value, and determine how much is caused by one use to which it is put, and how much by another. Take the case before us; it is impossible to disintegrate the value of that portion of the road within Indiana, and determine how much of that value springs from its use in doing interstate business, and how much from its use in doing business wholly within the State. An attempt to do so would be entering upon a mere field of uncertainty and speculation. And because of this fact it is something which an assessing board is not required to attempt." 154 U. S. 445, 446.

" It is enough for the State, that it finds within its borders property which is of a certain value. What has caused that value is immaterial. It is protected by state laws, and the rule of all property taxation is the rule of value, and by that rule property engaged in interstate commerce is controlled, the same as property engaged in commerce within the State. Neither is this an attempt to do by indirection what cannot be done directly, that is, to cast a burden on interstate commerce. It comes rather within that large class of state action, like certain police restraints, which, while indirectly affecting, cannot be considered as a regulation of interstate commerce, or a direct burden upon its free exercise." 154 U. S. 446, 447.

" It is true, there may be exceptional cases," " as, for instance, where the terminal facilities in some large city are of enormous value, and so give to a mile or two in such city a value out of all proportion to any similar distance elsewhere along the line of the road, or where in certain localities the company is engaged in a particular kind of business requiring for sole use in such localities an extra amount of rolling stock. If testimony to this effect was presented by the company to the state board, it must be assumed, in the absence of anything to the contrary, that such board, in making the assessment of track and rolling stock within the State, took into account the peculiar and large value of such facilities and such extra rolling stock." 154 U. S. 431.

This court further held that the question of the cash valuation of the company's property was a question of fact, the determination of which was committed to the state board of tax commissioners; and that the decision of the board could not be overthrown by evidence going only to show that the fact was otherwise than as so found and determined. 154 U. S. 434, 435.

By § 69 of the statute of Indiana of 1891, telegraph companies, incorporated under the laws of any other State, besides being taxable upon their tangible property in Indiana in the same manner as other tangible property was taxed, were required to make annual returns of their receipts from business in the State, including the proportion of gross receipts for business done in connection with the lines of other companies; and to pay a tax of one per cent on such receipts.

The supplemental and amendatory statute of March 6, 1893, c. 171, now in question, repealed that section of the statute of 1891, and substituted provisions very like those of the statutes of Massachusetts, above considered, for the taxation of the telegraph property, and not essentially different from those of the statute of Indiana of 1891 for the assessment of railroad property, except in being more favorable to the company by expressly providing for a deduction of the value of real property outside the State from the total valuation.

By § 1 of the statute of 1893, every telegraph company, whether incorporated under the laws of Indiana, or of any other State, engaged in telegraph business in Indiana, was required to return annually to the auditor of the State a statement of its whole capital stock, the par value of its shares, their market value, or, if they had no market value, the actual value thereof; its principal place of business; its real estate, machinery and appliances, subject to local taxation in each county and township within the State; its real estate outside the State and not directly used in the conduct of its business, and the sums at which such real estate was assessed for local taxation; the mortgages upon the whole or any part of its property; the whole length of all its lines, the length of its lines outside the State of Indiana, and the length of its

lines in each county and township within the State. By §§ 6, 7, the state board of tax commissioners, "after examining such statements, and after ascertaining the value of such properties therefrom, and from such other information as they may have or obtain," and requiring books and papers to be produced, and witnesses to be examined "in case they shall deem it necessary to enable them to ascertain the true cash value of such property," were required to value and assess the property of each company by ascertaining the true cash value of its entire property, for that purpose taking the aggregate value of its shares, if they had a market value, or if they had none, the actual value thereof or of the capital of the company; then, for the purpose of ascertaining the true cash value of the property within the State, (first ascertaining and deducting the assessed value for taxation, in the localities where the same was situated, of its real estate outside the State, and not specifically used in its general business,) taking the proportion of the whole aggregate value of its property, as above ascertained, which the length of its lines within the State bore to the total length of its lines; and deducting therefrom the assessed value for taxation of real estate, machinery and appliances within the State and subject to local taxation in the counties and townships.

The Supreme Court of Indiana considered the present case to be governed by the decisions of this court in the cases of the *Railroad Companies* v. *Backus*, above cited; and, after referring to some of the passages above quoted from those decisions, added: "All that is thus forcibly and convincingly said as to the taxation of interstate railroad property is equally applicable to the taxation of interstate telegraph property. It is not easy to see how one mile of appellant's telegraph line connecting Chicago with New York could be of less value than any other mile of the same line. Cut out one mile, even though it be through a swamp or under a lake, and the value of the whole line is practically destroyed. The property is a unit, valuable as a whole and by reason of its several connections, and not by virtue of any part taken by itself. No way, therefore, by which the value of the lines in this State

can be determined seems so just and equitable as to take that proportion of the whole value which the mileage in this State bears to the whole mileage." 141 Indiana, 294, 295.

In that court (as now in this) the telegraph company insisted that the statute of 1893, in applying the mileage basis of valuation to the lines of telegraph, compelled the state board of tax commissioners to add large outside values to the values of the Indiana portions of the lines, because the parts of the company's property outside the State were proportionately of greater value than the parts within the State. To which that court answered: "The act, it is true, provides a method of valuation, the mileage method, as a basis for the taxation of certain property within the State of Indiana. But this is simply a means for determining the true cash value of the property within the State; and if in the case of appellant's property, or in any other case, it is shown to the board, or is discovered by them, that still further deductions should be made, on account of larger proportional values outside of the State, or for any other reason, then the board must make such deductions, so that, finally, only the property within the State of Indiana shall be assessed, and that at its true cash value." 141 Indiana, 297.

The state court distinctly held that the statute of 1893, being supplementary to and amendatory of the statute of 1891, must be construed in connection therewith, and be treated as a part of one and the same general tax act; that the duties and powers of the state board of tax commissioners, as defined and prescribed in the statute of 1891, were not abridged or changed, in any respect, by the statute of 1893; and therefore, interpreting the statute of 1893 in the light of the provisions of the statute of 1891, (which have been cited above,) concluded "that in the act of 1893 the legislature provided the mileage method as the basis for the assessment of telegraph and other like property, both as to lines situated partly within and partly without this State, and also as to lines running through several counties or other subdivisions of the State; but that it was not the intention of the legislature, nor is it the meaning of that act, that any property

outside of the State should be assessed by importation of values or otherwise, or that any property should be assessed at more or less than its true cash value. Construing the acts of 1891 and 1893 together, it will therefore be presumed, in the absence of evidence to the contrary, that the state board has deducted from the total valuation of all interstate property such values, if any, of extra-state property as will leave the remaining property, within and without the State, as near as may be, of equal proportional value." "The act of 1893 provides, generally, for a mode of ascertaining the true cash value of that part of interstate telegraph and other property which is within the State of Indiana, to wit, the mileage method. But should there be particular cases where that method must be modified in order to reach the necessary result, namely, the true cash value of such part of the property as is within the jurisdiction of the State, the law of 1893 itself supplies the means of doing so." 141 Indiana, 285, 297–300.

The statute of Indiana of 1893 regarding telegraph companies, therefore, as construed and applied by the Supreme Court of the State, like the statute of 1891 regarding railroad companies, while it takes, as the basis of valuation of the company's property within the State, the proportion of the value of its whole capital stock which the length of its lines within the State bears to the whole length of all its lines, makes it the duty of the state board of tax commissioners, to make such deductions, on account of a greater proportional value of the company's property outside the State, or for any other reason, as to assess its property within the State at its true cash value only; and is therefore governed by the same considerations upon which the provisions of the statute of 1891 for taxing railroad companies were held to be constitutional by the decisions of this court in the *Indiana Railroad cases,* above cited.

The bill in the present case was filed before those decisions were rendered; and is so drawn as to make it somewhat difficult to distinguish matters of fact alleged with such clearness and precision as to be admitted by the demurrer, from the

argumentative statements, and the conclusions of law, which are freely scattered throughout the bill.

The bill alleges that the state board of tax commissioners, in fixing the valuation of the plaintiff's property in Indiana, (deducting the value of real estate, machinery and fixtures subject to local taxation within the State,) at the sum of $2,297,652, and at the rate of $357 per mile of telegraph line, placed upon that property, beyond its true cash value, as measured by the cost of replacing the same, making reasonable allowances for deterioration, additional values of the plaintiff's business, property and good will, both in and out of the State, and franchises granted by the United States, by the State of New York and by foreign countries. This allegation is made by way of preliminary and inducement to the concluding statement of the paragraph, that "in witness thereof" the tax commissioners entered upon their record a certificate and statement, which is set forth, and which has no tendency to prove anything of the kind, but merely shows an assessment and valuation made by the state board of tax commissioners, "after full consideration," and "in accordance with the act of the general assembly of the State of Indiana, approved March 6, 1893." Moreover, the cost of the property, or of its replacement, is by no means a true measure of its value; the bill, while it elsewhere states the value of the plaintiff's real estate in other States, and of its stocks and bonds of other companies, nowhere undertakes to fix the value of its franchises from the United States, the State of New York, and foreign countries; and the tax commissioners, by the authorities already cited, had the right and the duty, in estimating the value of the plaintiff's property in Indiana, to take into consideration those franchises and the other elements mentioned in this paragraph of the bill.

The bill further alleges that the state board of tax commissioners did not attempt to specify or describe the plaintiff's real estate, machinery and appliances subject to local taxation. But the statute did not require of them any such specification or description; nor does the plaintiff appear to have requested them, or to have done anything towards assisting them to do so.

The bill then alleges that the commissioners took, as a basis of their assessment, the value of the plaintiff's entire capital stock, estimating the value of the shares according to the price of such shares in the stock exchange market in New York City, and dividing such aggregate value by the total number of miles of the plaintiff's telegraph lines, wherever situated, and thereby obtaining a pretended valuation of $357 per mile of its telegraph line in Indiana, which was " grossly excessive and far beyond the true cash value of complainant's said property in Indiana."  But the bill immediately proceeds to allege that "said state board of tax commissioners, in reaching said valuation of complainant's said property in Indiana, did not consider and assess the value of the property of complainant situated in Indiana, otherwise than by pursuing the requirements of said pretended statute."  And the facts stated elsewhere in the bill demonstrate that the commissioners did not obtain their valuation by merely applying the rule stated in this paragraph.  Had they done so, the result would have been that the whole number of shares of stock, being 948,200, at $94.50 a share, would have been $89,594,900, which, divided by 189,576, the whole number of miles of all the plaintiff's lines, would give a value per mile of upwards of $472, or nearly one third more than the valuation adopted.

The bill further alleges that there was no market value for all the shares of the plaintiff's stock; that the price obtained for a very few shares in the New York stock exchange did not fairly represent the actual value of the plaintiff's property; and that any price at which any shares might be sold by holders thereof, whether calculated upon any market value or upon actual value, included a consideration of the plaintiff's franchises, its contracts with other companies, its actual past and probable future earnings from many sources, skill and enterprise of its managers, and all its real and personal estate in Indiana or elsewhere, including real estate of great value in other States, all which were " blended so as to render it impossible to separate and disintegrate the portions of value applicable to any and each of said elements of value of said

shares." This is hardly more than an argument to show the difficulty of ascertaining the cash value of the plaintiff's property in the State of Indiana. It certainly has no tendency to show that the tax commissioners did not, as they were required to do by the statute, as since construed by the Supreme Court of the State, assess the plaintiff's property in Indiana at its true cash value, according to their best knowledge and judgment, and after making all proper deductions, on account of larger proportional values of its property and business outside the State, or for any other reason.

The remaining allegations of the bill are either repetitions or amplifications of those already considered, or are averments of conclusions of law. The allegation that "the attempted and pretended valuation of complainant's said property by said state board of tax commissioners, in manner aforesaid," "necessarily includes, and does in fact include values, which are no part of the true cash value of the property of complainant in Indiana," is but equivalent to an assertion that the decision of the tax commissioners upon the question of fact committed by the statute to their determination was erroneous. As said by this court in *Pittsburg &c. Railway* v. *Backus*, above cited, "Whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact; and if such determination comes into inquiry before the courts, it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined." 154 U. S. 434, 435.

*Judgment affirmed.*