# AMERICAN REFRIGERATOR TRANSIT COMPANY
## v. HALL.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 226.   Argued and submitted March 16, 17, 1899.— Decided April 24, 1899.

It having been settled, by previous decisions of this court, that where a cor-
poration of one State brings into another State, to use and employ, a
portion of its movable property, it is legitimate for the latter State to
impose upon such property thus used and employed, its fair share of
the burdens of taxation imposed upon similar property, used in like way
by its own citizens, it is now held that such a tax may be properly assessed
and collected when the specific and individual items of property so used
(railway cars) were not continuously the same, but were constantly chang-
ing according to the exigencies of the business, and that the tax may be
fixed by an appraisement and valuation of the average amount of the
property thus habitually used and employed; and that the fact that such
cars were employed as vehicles of transportation in the interchange of
interstate commerce would not render their taxation invalid.

In March, 1896, the American Refrigerator Transit Com-
pany, a corporation organized under the laws of the State of
Illinois, filed, in the district court of Arapahoe County, State
of Colorado, against Frank Hall, treasurer of said county, a
bill of complaint seeking to restrain the defendant from en-
forcing payment by the said transit company of certain taxes
assessed upon refrigerator cars owned by the company, and
used for the transportation of perishable freight over various
lines of railroad throughout the United States.  The bill alleged
that the business in which said cars were engaged was exclu-
sively interstate commerce business; that the company has
and has had no office or place of business within the State of
Colorado, and that all the freight transported in plaintiff's
cars was transported either from a point or points in a State
outside of the State of Colorado to a point within that State,
or from a point in the State of Colorado to a point without
said State, or between points wholly outside of said State;
that said cars had no taxable situs within said State; that said
assessment of taxes upon said cars was without authority of

law and void; and that complainant had no plain or adequate remedy at law.

A demurrer to the complaint was overruled and answer was filed denying some and admitting other allegations of the bill. At the trial the parties agreed to and filed the following stipulation:

"1st. That plaintiff is and was during the times mentioned in the petition a corporation duly organized and existing by virtue of the laws of the State of Illinois, with its principal office in the city of East St. Louis, in said State; that it is engaged in the business of furnishing refrigerator cars for the transportation of perishable products over the various lines of railroads in the United States; that these cars are more expensive than the ordinary box or freight car; that the cars referred to are the sole and exclusive property of the plaintiff, and that the plaintiff furnishes the same to be run indiscriminately over any lines of railroad over which shippers on said railroads may desire to route them in shipping, and furnishes the same for transportation of perishable freight upon the direct request of shippers or of railroad companies requesting the same on behalf of shippers, but on the responsibility of the carrier and not of the shipper; that as compensation for the use of its cars plaintiff received a mileage of three fourths of a cent per mile run from each railroad company over whose line said cars are run, such rate of payment being the same as is paid by all railroad companies to each other for the use of the ordinary freight cars of each when used on the lines of others in the exchange of cars incident to through transportation of freight over connecting lines of railroads; that plaintiff has not and never has had any contract of any kind whatsoever by which its cars are leased or allotted to or by which it agrees to furnish its cars to any railroad company operating within the State of Colorado; that it has and has had during said times no office or place of business nor other property than its cars within the State of Colorado, and that all the freight transported in plaintiff's cars in or through the State of Colorado, including the cars assessed, was transported in such cars either from a point or points in a State of the United

States outside of the State of Colorado to a point in the State of Colorado, or from a point in the State of Colorado to a point outside of said State, or between points wholly outside of said State of Colorado, and said cars never were run in said State in fixed numbers nor at regular times, nor as a regular part of particular trains, nor were any certain cars ever in the State of Colorado, except as engaged in such business aforesaid, and then only transiently present in said State for such purposes.

"That, owing to the varying and irregular demand for such cars, the various railroad companies within the State of Colorado have not deemed it a profitable investment to build or own cars of such character, and therefore relied upon securing such cars when needed from the plaintiff or corporations doing a like business.

"That it is necessary for the railroad companies operating within the State of Colorado, and which are required to carry over their lines perishable freight, such as fruits, meats and the like, to have such character of cars wherein they can safely transport such character of freight.

"2d. That the average number of cars of the plaintiff used in the course of the business aforesaid within the State of Colorado during the year for which such assessment was made would equal forty, and that the cash value of plaintiff's cars exceeds the sum of $250 per car, and that if such property of the plaintiff is assessable and taxable within such State of Colorado, then the amount for which such cars, the property of the plaintiff, is assessed by said state board of equalization is just and reasonable, and not in excess of the value placed upon other like property within said State for the purposes of taxation.

"3d. That said company is not doing business in this State, except as shown in this stipulation and by the facts admitted in the pleadings.

"4th. That in case it be found by the court under the undisputed facts set forth in the pleadings and the facts herein stipulated that the authorities of the State of Colorado under existing laws have no power to assess or tax the said property of plaintiff, then judgment shall be entered herein for the

plaintiff for the relief prayed; otherwise judgment shall be entered for the defendants.

"The following constitutional and statutory provisions are referred to in the opinion:

'All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax.' (§ 10, art. 10, state const.)

'SEC. 3765. (M. A. S.) All property, both real and personal, within the State, not expressly exempt by law, shall be subject to taxation. . . .'

'SEC. 3804. . . . It shall be the duty of said board (the board of equalization) to assess all the property in this State owned, used or controlled by railway companies, telegraph, telephone and sleeping or palace car companies.

'SEC. 3805. The president, vice president, general superintendent, auditor, tax agent or some other officer of such railway, sleeping, general or other palace car, or telegraph or telephone company, or corporation, owning, operating, controlling or having in its possession in this State any property, shall furnish said board on or before the fifteenth day of March, in each year, a statement signed and sworn to by one of such officers, and showing in detail for the year ending on the thirty-first day of December preceding.'

"5th. A full list of rolling stock belonging to or operated by such railway company, setting forth the number, class and value of all locomotives, passenger cars, sleeping cars or other palace cars, express cars, baggage cars, mail cars, box cars, cattle cars, coal cars, platform cars and all other kinds of cars owned or used by said company. The statement shall show the actual proportion of the rolling stock in use on the company's road, all of which is necessary for the transportation of freight and passengers, and the operation of the road within the State during the year for which the statement is made. The said statement shall also show the actual proportion of rolling stock of said company used upon leased lines and lines operated with others within the

State, the mileage so leased and operated and the location thereof.  .  .  .

"7th.  .  .  .  Whenever it shall be found that one corporation uses or controls any property belonging to or owned by another corporation, said board may assess such property either to the corporation using or controlling the same, or to the corporation by which it is owned or to which it belongs. But every such corporation shall, in the statement to said board, set forth what property belonging to or owned by any other corporation is used or controlled by the corporation making the statement."

The cause having come on to be heard, judgment was entered on behalf of the plaintiff, awarding a perpetual injunction as prayed for in the bill of complaint.   Thereupon an appeal was taken to the Supreme Court of the State, from whose decision, reversing the judgment of the trial court and directing the dismissal of the bill, an appeal was taken to this court.

*Mr. Judson Harman* for plaintiff in error.   *Mr. Percy Werner* was on his brief.

*Mr. Alexander B. McKinley* for defendant in error, submitted on his brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

In this record we again meet the problem, so often presented, how to reconcile the rightful power of a State to tax property within its borders with its duty to obey those provisions of the Federal Constitution which forbid the taking of property without due process of law, and the imposition of burdens upon interstate commerce.

The frequency with which the question has arisen is evidence both of its importance and of its difficulty.   The vast increase of commerce throughout the country, and the consequent necessary increase of the means whereby such commerce is carried on, have been the occasion of many of the cases in which this court has been called upon to consider the

subject.   The expense involved in the manufacture of some of the common articles in daily use and in their transportation is so great as to be beyond the means of individuals, and has rendered necessary the aggregation of capital in the form of corporations.   Usually such corporations, though organized under the law of one State, make their profits by doing their business in several or all of the States, and, while so doing, receive the protection of their laws.   When the taxpayers of one State perceive that they are subjected to competition by the importation of articles made in another, or that they are contributing continually to the prosperity of foreign corporations, what more natural than that they should demand that some share of the public burdens should be put upon such corporations?   The difficult task of the lawmaker is to meet that natural and proper demand without infringing upon the freedom of interstate commerce, or depriving those engaged therein of the equal protection of the laws.

In the case before us we do not need to go far in search of the principles which determine it.   We think they may be found in the cases of *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; and *Adams Express Co.* v. *Ohio*, 165 U. S. 194.

In the first of those cases was involved the question of the validity of a law of Massachusetts, which imposed on the Western Union Telegraph Company, a corporation of the State of New York, a tax on account of the property owned and used by it within the State of Massachusetts, the value of which was to be ascertained by comparing the length of its lines in that State with the length of its entire lines.   This court held that such a tax is essentially an excise tax, and not forbidden by the commerce clause of the Constitution.

In *Pullman's Palace Car Co.* v. *Pennsylvania* the nature of the case and the conclusion were thus stated by Mr. Justice Gray:

"The cars of this company within the State of Pennsylvania are employed in interstate commerce; but their being so employed does not exempt them from taxation by the State; and the State has not taxed them because of their being so

employed, but because of their being within its territory and
jurisdiction. The cars were continuously and permanently
employed in going to and fro upon certain routes of travel. If
they had never passed beyond the limits of Pennsylvania it
could not be doubted that the State could tax them, like other
property within its borders, notwithstanding they were em-
ployed in interstate commerce. The fact that, instead of stop-
ping at the state boundary, they cross that boundary in going
out and coming back, cannot affect the power of the State to
levy a tax upon them. The State, having the right, for the pur-
poses of taxation, to tax any personal property found within
its jurisdiction, without regard to the place of the owner's dom-
icil, could tax the specific cars which at a given moment were
within its borders. The route over which the cars travel
extending beyond the limits of the State, particular cars may
not remain within the State; but the company has at all
times substantially the same number of cars within the State,
and continuously and constantly uses there a portion of its
property; and it is distinctly found, as matter of fact, that
the company continuously, throughout the periods for which
these taxes were levied, carried on business in Pennsylvania,
and had about one hundred cars within the State.

"The mode which the State of Pennsylvania adopted to
ascertain the proportion of the company's property upon
which it should be taxed in that State, was by taking as a
basis of assessment such proportion of the capital stock of the
company as the number of miles over which it ran its cars
within the State bore to the whole number of miles, in that
and other States, over which its cars were run. This was a
just and equitable method of assessment; and if it were adopted
by all the States through which these cars ran, the company
would be assessed upon the whole of its capital stock and no
more."

*Adams Express Co.* v. *Ohio* was a case wherein was drawn
in question the validity of a law of the State of Ohio impos-
ing an assessment upon an express company whose business
was carried on through several States. The statute required a
board of assessors "to proceed to ascertain and assess the value

of the property of express, telegraph and telephone companies in Ohio, and in determining the value of the property of said companies in this State, to be taxed within the State and assessed as herein provided, said board shall be guided by the value of said property as determined by the value of the entire capital stock of said companies, and such other evidence and rules as will enable said board to arrive at the true value in money of the entire property of said companies within the State of Ohio, in the proportion which the same bears to the entire property of said companies, as determined by the value of the capital stock thereof, and the other evidence and rules as aforesaid."

It was contended, on behalf of the express company, that the law in question was invalid because it sought to impose taxes on property beyond the territorial jurisdiction of Ohio; because the assessments therein provided for were an invasion of the constitutional guaranty of the equal protection of the laws, and because the assessments imposed a burden upon interstate commerce. But this court held otherwise. Portions of the opinion of Mr. Chief Justice Fuller may be appropriately quoted:

"Although the transportation of the subjects of interstate commerce, or the receipts received therefrom, or the occupation or business of carrying it on, cannot be directly subjected to state taxation, yet property belonging to corporations or companies engaged in such commerce may be; and whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as falling within the inhibition of the Constitution. Corporations and companies engaged in interstate commerce should bear their proper proportion of the burdens of the governments under whose protection they conduct their operations, and taxation on property, collectible by the ordinary means, does not affect interstate commerce otherwise than incidentally, as all business is affected by the necessity of contributing to the support of government.

"As to railroad, telegraph and sleeping car companies, engaged in interstate commerce, it has often been held by this court that their property, in the several States through which

their lines or business extended, might be valued as a unit for
the purposes of taxation, taking into consideration the uses
to which it was put and all the elements making up aggregate
value, and that a proportion of the whole fairly and properly
ascertained might be taxed by the particular State without
violating any Federal restriction.

"The valuation was thus not confined to the wires, poles
and instruments of the telegraph company; or the roadbed,
ties, rails and spikes of the railroad company; or the cars of
the sleeping car company; but included the proportionate
part of the value resulting from the combination of the means
by which the business was carried on — a value existing to an
appreciable extent throughout the entire domain of operation.
And it has been decided that a proper mode of ascertaining the
assessable value of so much of the whole property as is situ-
ated in a particular State is, in the case of railroads, to take
that part of the value of the entire road which is measured by
the proportion of its length therein to the length of the whole,
*Pittsburgh Railway* v. *Backus*, 154 U. S. 421, or taking as the
basis of assessment such proportion of the capital stock of a
sleeping car company as the number of miles of railroad over
which its cars are run in a particular State bears to the whole
number of miles traversed by them in that and other States,
*Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, or
such a proportion of the whole value of the capital stock of a
telegraph company as the length of its lines within a State bears
to the length of its lines everywhere, deducting a sum equal to
the value of its real estate and machinery subject to local taxa-
tion within the State. *Western Union Tel. Co.* v. *Taggart*, 163
U. S. 1.

"Doubtless there is a distinction between the property of
railroad and telegraph companies and that of express com-
panies. The physical unity existing in the former is lacking
in the latter; but there is the same unity in the use of the
entire property for the specific purpose, and there are the
same elements of value arising from such use. The cars of
the Pullman Company did not constitute a physical unity, and
their value as separate cars did not bear a direct relation to

the valuation which was sustained in that case. The cars were moved by railway carriers under contract, and the taxation of the corporation in Pennsylvania was sustained on the theory that the whole property of the company might be regarded as a unit plant, with a unit value, a proportionate part of which value might be reached by the state authorities on the basis indicted."

On a petition for a rehearing, the questions were again fully argued, and the conclusions reached on the first hearing were reaffirmed. *Adams Express Co.* v. *Ohio*, 166 U. S. 185. From the opinion denying the rehearing, delivered by Mr. Justice Brewer, a few extracts may be quoted as applicable to the case in hand:

" Where is the situs of this intangible property? The Adams Express Company has, according to its showing, in round numbers $4,000,000 of tangible property scattered through different States, and with that tangible property thus scattered transacts its business. By the business which it transacts, by combining into a single use all these separate pieces and articles of tangible property, by the contracts, franchises and privileges which it has acquired and possesses, it has created a corporate property of the actual value of $16,000,000. Thus, according to its figures, this intangible property, its franchises, privileges, etc., is of the value of $12,000,000, and its tangible property of only $4,000,000. Where is the situs of this intangible property? Is it simply where its home office is, where is found the central directing thought which controls the workings of the great machine, or in the State which gave it its corporate franchise, or is that intangible property distributed wherever its tangible property is located and its work done? Clearly, as we think, the latter. Every State within which it is transacting business and where it has its property, more or less, may rightfully say that the $16,000,000 of value which it possesses springs not merely from the original grant of corporate power by the State which incorporated it or from the mere ownership of the tangible property, but it springs from the fact that that tangible property it has combined with contracts, franchises

and privileges into a single unit of property, and this State contributes to that aggregate value not merely the separate value of such tangible property as is within its limits, but its proportionate share of the value of the entire property. That this is true is obvious from the result that would follow if all the States other than the one which created the corporation could and should withhold from it the right to transact express business within their limits. It might continue to own all its tangible property within each of those States, but, unable to transact the express business within their limits, that $12,000,000 of value attributable to its intangible property would shrivel to a mere trifle. . . . In conclusion, let us say that this is eminently a practical age; that courts must recognize things as they are and as possessing a value which is accorded to them in the markets of the world, and that no fine spun theories about situs should interfere to enable these large corporations, whose business is carried on through many States, to escape from bearing in each State such burden of taxation as a fair distribution of the actual value of their property among those States requires."

The constitution of the State of Colorado provides that all corporations in the State or doing business therein shall be subject to taxation on the real and personal property owned or used by them within the territorial limits of the authority levying the tax, and its statutes provide for a board of equalization, whose duty it shall be to assess all the property in the State owned, used or controlled by railway companies, telegraph, telephone and sleeping or palace car companies; and that whenever it shall be found that one corporation uses or controls any property belonging to or owned by another corporation, said board may assess such property either to the corporation using or controlling the same, or to the corporation to which it belongs.

The American Refrigerator Transit Company is a corporation of the State of Illinois, engaged in the business of furnishing refrigerator cars for the transportation of perishable products over the various lines of railroads in the United States, and receives as compensation for the use of its cars a

mileage of three fourths of a cent per mile from each railroad company over whose lines said cars are run.

The receiver of the Union Pacific, Denver and Gulf Company reported to the board of equalization that he had on the line of the railroad which he was operating within the State of Colorado forty-two refrigerator cars belonging to the American Refrigerator Transit Company on December 31, 1894. The board thereupon assessed to the Transit Company said forty-two cars, at a valuation of two hundred and fifty dollars each, and distributed said assessment to the different counties through which the line of said railroad extended.

It was stipulated in the trial court "that it is necessary for the railroad companies operating within the State of Colorado, and which are required to carry over their lines perishable freight, to have such character of cars wherein they can safely transport such freight; and that owing to the varying and irregular demands for such cars, the various railroad companies within the State of Colorado have not deemed it profitable to build or own cars of such character, and therefore rely upon securing such cars when needed from the Transit Company, or corporations doing a like business."

It was further stipulated "that the average number of cars of the plaintiff used in the course of the business aforesaid within the State of Colorado during the year for which such assessment was made would equal forty, and that the cash value of plaintiff's cars exceeds the sum of two hundred and fifty dollars per car, and that if such property of the plaintiff is assessable and taxable within such State, then the amount for which such cars, the property of the plaintiff, is assessed by said state board of equalization is just and reasonable, and not in excess of the value placed upon other like property within said State for the purposes of taxation."

Applying the reasoning and conclusions of the cases hereinbefore cited to those admitted facts, we have no difficulty in affirming the judgment of the Supreme Court of Colorado sustaining the validity of the taxation in question.

The state statutes impose no burdens on the business of the plaintiff in error, but contemplate only the assessment and

levy of taxes upon the property situated within the State; and the only question is whether it was competent to ascertain the number of the cars to be subjected to taxation by inquiring into the average number used within the state limits during the period for which the assessment was made.

It having been settled, as we have seen, that where a corporation of one State brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, we think that such a tax may be properly assessed and collected, in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business, and that the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed. Nor would the fact that such cars were employed as vehicles of transportation in the interchange of interstate commerce render their taxation invalid. *Marye* v. *Baltimore & Ohio Railroad*, 127 U. S. 117; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18.

The judgment of the Supreme Court of the State of Colorado is accordingly

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE WHITE dissented.