**CHICAGO & N. W. RY. CO. v. ROWLEY,**
County Treasurer, et al.

No. 2175.

District Court, D. Wyoming.

Nov. 9, 1932.

R. R. Rose and Vincent Mulvaney, both of Casper, Wyo., and Wilfred O'Leary, of Cheyenne, Wyo., for plaintiff.

J. A. Greenwood, Atty. Gen., Richard J. Jackson, Deputy Atty. Gen., George W. Ferguson and R. Dwight Wallace, Asst. Attys. Gen., John D. Dawson, of Douglas, Wyo., H. S. Harnsberger, of Lander, Wyo., George A. Weedell, of Casper, Wyo., and F. A. Barrett, of Lusk, Wyo., for defendants.

KENNEDY, District Judge.

This suit is one to restrain the collection of alleged illegal taxes by the treasurers of four counties named as defendants, upon the ground that the taxes so assessed and levied violate the commerce, due process, and equal protection clauses of the Federal Constitution (Const. art. 1, § 8, cl. 3; Amend. 14). The case was previously argued and submitted to the court; one of the defenses interposed being the lack of jurisdiction of this court upon the ground that the plaintiff had not established that it had no adequate remedy at law. On August 30, 1932, the court filed a written memorandum sustaining such defense and providing for the dismissal of plaintiff's bill, without considering the other points involved. Doubt was expressed by the decision upon this point; the court relying principally upon the recent decision of the Supreme Court in Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447. Thereafter, and before the decree was entered in accordance with the memorandum, counsel for plaintiff requested an opportunity to reargue the point as to the jurisdiction, which was granted by an order duly entered providing for a reopening of the case. The question of the jurisdiction was again presented in more elaborate form. The court has reached the conclusion that, upon a more thorough examination of the authorities, the jurisdiction of the court should be sustained. This conclusion is based upon the theory that, regardless of the plaintiff having failed in the bill to plead the element of multiplicity of suits, yet this element is clearly evident from the facts set

up, to the effect that four separate and distinct county treasurers would be necessary defendants in actions for relief in the state courts located in several different judicial districts. This situation brings into force and effect conditions described in some of the Supreme Court decisions which would appear to rule this case. The element of multiplicity of suits has long been regarded as one which, if established, will give a federal court of equity jurisdiction. In Union Pacific R. Co. v. Board of Com'rs of Weld County, 247 U. S. 282, 38 S. Ct. 510, 512, 62 L. Ed. 1110, Mr. Justice Van Devanter, in speaking for the court, says:

"Whether the section named is still in force, unqualified and unmodified, is the important question. If not in force, a single action at law would not suffice, for then it would be necessary to bring a separate action against each of several school districts and towns for its part of the tax. See Raymond v. Chicago Union Traction Co., supra, 207 U. S. 39, 40, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757. And if the section has been so qualified and modified that the continued existence of the right originally conferred on the taxpayer is involved in uncertainty, an essential element of the requisite remedy at law is wanting; for, as this court has said: 'It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. * * * Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law.' Davis v. Wakelee, 156 U. S. 680, 688, 15 S. Ct. 555, 39 L. Ed. 578."

Again discussing the point in Wilson v. Illinois Southern Railway Co., 263 U. S. 574, 44 S. Ct. 203, 68 L. Ed. 456, Mr. Justice Holmes, at page 576 of 263 U. S., 44 S. Ct. 203, 68 L. Ed. 456, uses the following language:

"The appellants rely mainly upon Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496. In that case a bill charging fraudulent overvaluation was dismissed and the dismissal was affirmed by this Court on two grounds, that there was an adequate remedy at law and that the plaintiff had not tendered or offered to pay the amount confessedly due. The latter ground is absent here. As to the former it seems to us that the present case is to be distinguished. Keokuk & Hamilton Bridge Co. v. Salm arose upon an assessment of real estate by county assessors in a single county, as to which the remedies available were pointed out. Here the assessment was of property in five counties, by the State Board of Equalization for 1917 and 1918, and by its successor the State Tax Commission for the two later years. Assuming that in each of the counties before the tax could be collected a judgment must be obtained in the county court in a civil suit and that in such suits the defendants, the present plaintiffs, could set up the facts here relied upon, as in the Keokuk Co.'s Case, not only would those suits be many, but there would be insuperable difficulty in determining what the proper assessment against the whole road should be and in apportioning the due share to the county concerned. This difficulty would recur in each of the five counties with not improbably different results in each. It seems to us that the right of full defence in those suits, if it exists, is not an adequate remedy at law. Raymond v. Chicago Union Traction Co., 207 U. S. 20, 38–40, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Kirby v. Lake Shore & Michigan Southern R. R., 120 U. S. 130, 134, 7 S. Ct. 430, 30 L. Ed. 569." .

The principle there announced has recently been recognized by a three-judge court in our own circuit in the case of Broadway Express v. Murray (D. C.) 60 F.(2d) 293, where, at page 297 of 60 F.(2d), Judge Kennamer says:

"The remedy here sought in equity is well founded. It is true the mere illegality of a tax does not authorize an injunction against its enforcement. There must be an absence of a plain, adequate, and complete legal remedy. Title 28, U. S. Code, § 384 (28 USCA § 384); Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; Stratton v. St. Louis S. W. Ry. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465. But the plaintiff had no such remedy. The monthly payment of mileage and other annual taxes required by section 9, c. 253, Sess. Laws 1929, would necessitate a multiplicity of suits to test the legality of those taxes between the same parties and involving the same issues."

In any event, a decision on the merits of the case in this court, under the circumstances presented, would seem to bring forward a settlement of the litigation in the appellate courts upon all the points involved.

Proceeding therefore to a consideration of the questions involved in the suit upon the merits, we are confronted here with facts which outline in detail the manner in which the state board of equalization arrived at the valuation of the plaintiff's property in Wy-

oming, which was subsequently certified under the statute to the several county boards. The first step taken by the board was to determine the entire value of the property of the plaintiff wherever located. This item was calculated by taking the average market value of the plaintiff's stocks and bonds over a period of five years and deducting therefrom the value of its nonoperating property locally assessed from which a figure of $385,-800,085 was secured. The next step was to capitalize the average income at 6 per cent. over the same period, which produced the figure of $364,771,720. The addition of these two items made a total of $750,571,805. Dividing this figure by two, produced a figure of $375,285,902, at which the entire property of plaintiff's system was valued. With this process the plaintiff seems to have no complaint, and in fact advocated its adoption in arriving at the valuation of the system.

■ The next step taken was in the matter of allotting the proper proportion of such value to the property located and assessable in the state. The first factor likewise upon which the plaintiff and defendants agree is that the traffic units operating in the state are 1.58 per cent. of the entire system. The next factor used by the taxing authorities is that of the use of rolling stock, which is determined to be 1.65 per cent. of the whole, likewise acceptable to both plaintiff and defendants. The next factor used was that of operating revenue, upon which the parties disagree; plaintiff claiming that the operating revenues as shown by the records of the company should be adopted as the element to be considered, while the testimony tends to show a figure purporting to be adopted by the commission arrived at by taking the gross operating revenue plus the net operating revenue and by the division of the two would give the proper average for this element. The figure arrived at by the board by this method purports to be 1.89 per cent., but which from the items used indicates a mistake in computation of the board, as 1.79 per cent. would be the proper result of such average. While the plaintiff contends that the unit of gross operating revenue, which is 1.46 per cent., should have been adopted, it has offered no authorities sustaining such contention, and therefore the basis as adopted by the board on this point should not be disturbed, with the exception that the correction should be made in the figures making said item 1.79 per cent.

The chief controversial question is over the adoption by the board of the mileage percentage in Wyoming as a proper factor in fixing valuation. There is no dispute over the figure itself, which is 3.29 per cent., but the plaintiff contending that it is not a proper element of fixing value under the circumstances of the case at bar, although the records showed that the board used it as a determining factor. The computation of the board was arrived at by an addition of the traffic units at 1.58 per cent., the use of the rolling stock at 1.65 per cent., the average of the gross and net revenue at 1.89 per cent., and the mileage percentage of 3.29 per cent., making a total of 8.41 per cent., which, divided by four, representing the four factors, gives an average basis of 2.10 per cent., thereby fixing the valuation adopted by the board at $7,881,003.04. (There is an apparent error of 10 cents which may be disregarded.)

■ It is undoubtedly true that the mileage percentage factor is a proper one under certain circumstances, as has repeatedly been announced by the Supreme Court. It is still recognized in cases where the conditions surrounding the tracks and facilities of a railroad are substantially the same in one state as in another. Where, therefore, these conditions are different as shown by the evidence, it would seem that the high court has found against the adoption of the factor in the way of giving a fair equalization of value.

The distinction was brought to light in the case of Pittsburgh, C., C. & St. L. Railway Co. v. Backus, 154 U. S. 421, 14 S. Ct. 1114, 38 L. Ed. 1031, where Mr. Justice Brewer discussed the subject, but the case passed into an affirmance by a divided court, presumably upon the theory that there was no evidence which justified the interference of a court of equity.

In Fargo v. Hart, 193 U. S. 490, 28 S. Ct. 498, 48 L. Ed. 761, Mr. Justice Holmes discusses the principle at page 499 of 193 U. S., 24 S. Ct. 498, 500, 48 L. Ed. 761, and differentiates the cases of the Supreme Court. His language is as follows:

"The general principles to be applied are settled. A state cannot tax the privilege of carrying on commerce among the states. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. On the other hand, it can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce among the states. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the state in taxing, even though the other parts of the system are

outside of the state. The sleepers and rails of a railroad, or the posts and wires of a telegraph company, are worth more than the prepared wood and the bars of steel or coils of wire, from their organic connection with other rails or wires and the rest of the apparatus of a working whole. This being clear, it is held reasonable and constitutional to get at the worth of such a line in the absence of anything more special, by a mileage proportion. The tax is a tax on property, not on the privilege of doing the business, but it is intended to reach the intangible value due to what we have called the organic relation of the property in the state to the whole system. Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 21, 22, 16 S. Ct. 1054, 41 L. Ed. 49, 57. And this principle, established by many cases, has been extended by the cases first cited above to the lines of express companies, although those lines are not material lines upon the face of the earth. There is the same organic connection as in the other cases.

"It is obvious, however, that this notion of organic unity may be made a means of unlawfully taxing the privilege, or property outside the state, under the name of enhanced value or good will, if it is not closely confined to its true meaning. So long as it fairly may be assumed that the different parts of a line are about equal in value, a division by mileage is justifiable. But it is recognized in the cases that if, for instance, a railroad company had terminals in one state equal in value to all the rest of the line through another, the latter state could not make use of the unity of the road to equalize the value of every mile. That would be taxing property outside of the state under a pretense. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus, 154 U. S. 421, 431, 14 S. Ct. 1114, 38 L. Ed. 1031, 1038; Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 23, 16 S. Ct. 1054, 41 L. Ed. 49, 57. The same principle applies to personal property which the state would not have the right to tax directly. Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 227, 17 S. Ct. 305, 41 L. Ed. 683, 697; [Id.], 166 U. S. 185, 222, 223, 17 S. Ct. 604, 41 L. Ed. 965, 978. In Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus there was reason to suspect an infraction of constitutional rights, but the secretary of state testified that there was no assessment of property outside the state (154 U. S. 434, 14 S. Ct. 1114, 38 L. Ed. 1031, 1039), and therefore the court could not say that there was more than a possible overvaluation by the board. Of course, if the board did not go be-

yond its jurisdiction, its decision was final. But the court recognized that if the facts charged had appeared the case would have been different. In the Express Companies' Cases previously decided, it was pointed out that there was nothing to show that the lien might not fairly be assumed to be of substantially the same value throughout. But it was intimated on the pages just cited that if the companies should prove the fact to be otherwise a different rule would apply, and the statutes were construed not to prevent such a difference from being taken into account."

In that case the lower court was reversed, also by a divided court.

In Union Tank Line v. Wright, 249 U. S. 275, 39 S. Ct. 276, 63 L. Ed. 602, the court clearly holds that the mileage percentage basis, where the evidence showed that the line in one state was substantially different from it is elsewhere, amounted to an arbitrary method which produced results wholly unreasonable. At pages 282, 283, of 249 U. S., 39 S. Ct. 276, 278, 63 L. Ed. 602, the court says:

"A state may not tax property belonging to a foreign corporation which has never come within its borders—to do so under any formula would violate the due process clause of the Fourteenth Amendment. In so far, however, as movables are regularly and habitually used and employed therein, they may be taxed by the state according to their fair value along with other property subject to its jurisdiction, although devoted to interstate commerce. While the valuation must be just it need not be limited to mere worth of the articles considered separately but may include as well 'the intangible value due to what we have called the organic relation of the property in the state to the whole system.' How to appraise them fairly when the tangibles constitute part of a going concern operating in many states often presents grave difficulties; and absolute accuracy is generally impossible. We have accordingly sustained methods of appraisement producing results approximately correct—for example, the mileage basis in case of a telegraph company (Western Union Telegraph Co. v. Massachusetts [125 U. S. 530, 8 S. Ct. 961, 31 L. Ed. 790]) and the average amount of property habitually brought in and carried out by a car company (American Refrigerator Transit Co. v. Hall [174 U. S. 70, 19 S. Ct. 599, 43 L. Ed. 899]). But if the plan pursued is arbitrary and the consequent valuation grossly excessive it must be condemned because of conflict with the commerce clause

or the Fourteenth Amendment or both. Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530, 8 S. Ct. 961, 31 L. Ed. 790; Marye v. Baltimore & Ohio R. Co., 127 U. S. 117, 8 S. Ct. 1037, 32 L. Ed. 94; Pullman's Palace-Car Co. v. Pennsylvania, 141 U. S. 18, 26, 11 S. Ct. 876, (35 L. Ed. 613); Adams Express Co. v. Ohio, 165 U. S. 194, 17 S. Ct. 305, 41 L. Ed. 683; Id., 166 U. S. 185, 17 S. Ct. 604, 41 L. Ed. 965; American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 19 S. Ct. 599, 43 L. Ed. 899; Union Refrigerator Transit Co. v. Lynch, 177 U. S. 149, 20 S. Ct. 631, 44 L. Ed. 708; Fargo v. Hart, 193 U. S. 490, 24 S. Ct. 498, 48 L. Ed. 761; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 453, 38 S. Ct. 373, 62 L. Ed. 827.

"In the present case the comptroller general made no effort to assess according to real value or otherwise than upon the ratio which miles of railroad in Georgia over which the cars moved bore to total mileage so traversed in all states. Real values—the essential aim —of property within a state cannot be ascertained with even approximate accuracy by such process; the rule adopted has no necessary relation thereto. During a year two or three cars might pass· over every mile of railroad in one state while hundreds constantly employed in another moved over lines of less total length. Fifty-seven was the average number of cars within Georgia during 1913, and each had a 'true' value of $830. Thus the total there subject to taxation amounted to $47,310—the challenged assessment specified $291,196.

"We think plaintiff in error's property was appraised according to ·an arbitrary method which produced results wholly unreasonable and that to permit enforcement of the proposed tax would deprive it of property without due process of law and also unduly burden interstate commerce."

In Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782, Mr. Justice Holmes, in again delivering the opinion of the court, discusses the element of mileage percentage ·at page 69 of 253 U. S., 40 S. Ct. 435, 436, 64 L. Ed. 782, in the following language:

"As the law is administered, the tax commissioner fixes the value of the total property of each railroad by the total value of its stocks and bonds and assesses the proportion of this value that the main track mileage in North Dakota bears to the main track of the whole line. But on the allegations of the bill which is all that we have before us, the circumstances are such as to make that mode of

assessment indefensible. North .Dakota is a State of plains, very different from the other States, and the cost of the roads there was much less than it was in mountainous regions that the roads had to traverse. The State is mainly agricultural. Its markets are outside its boundaries and most of the distributing centers from which it purchases also are outside. · It naturally follows that the great and very valuable terminals of the roads are in other States. So looking only to the physical track the injustice of assuming the value to be evenly distributed according to main track mileage is plain. But that is not all.

"The only reason for allowing a State to look beyond its borders when it taxes the property of foreign corporations is that it may get the true value of the things within it, when they are part of an organic system of wide extent, that gives them a value above what they otherwise would possess. The purpose is not to expose the heel of the system to a mortal dart—not, in other words, to open to taxation what is not within the State. Therefore no property of such an interstate road situated elsewhere can be taken into account unless it can be seen in some plain and fairly intelligible way that it adds to the value of the road and the rights exercised in the State."

■ Applying the principle of these cases to the case at bar, I am clearly of the opinion that the facts before the board and now before the court are sufficient to justify the conclusion that the track mileage percentage was and is an impotent and erroneous factor in fixing the value of the plaintiff's property in the state of Wyoming, and its use by the board with the true facts before it amounted to an arbitrary and unreasonable method, transcending plaintiff's constitutional rights. It is true that it was only used by the state board as one of the factors, yet, if it were erroneous, it is as potent in arriving at an improper figure of valuation as though it were used as the sole factor, differing in degree only when used with other factors in the overvaluation which it produces, as distinguished from a greater overvaluation which it would produce if used singly. The testimony in the case clearly shows that the differences of plaintiff's line in Wyoming as compared with its lines outside consists in its physical track, the distance between stations, the absence of expensive terminal facilities, and the like, which all make for overvaluation in Wyoming when the mileage percentage factor is used. I shall not attempt

734

to rehearse the evidence directed to this point, but content myself with the feeling that it is sufficient to justify the conclusion reached.

■ The remaining point in the case revolves around plaintiff's contention, that plaintiff's property has been consistently, continuously, and intentionally valued upon a different and a higher basis than other property in the state, together with the claim that much taxable property in the state has been continuously and intentionally omitted from taxation lists. Evidence has been presented on behalf of the plaintiff tending to support its contention in this respect. When the proofs are analyzed, however, it must be admitted that, so far as the agricultural and grazing land valuations are concerned, they generally represent the true and full value of such properties. In other classes of property, there are isolated instances in some of the counties through which plaintiff's line passes, where there may have been valuations for assessment at less than the true value. These proofs, however, in my opinion, do not reach the dignity of a continuous, studied, and intentional undervaluation, nor is there any showing which justifies the conclusion that there was a studied attempt on the part of the taxing officials to bring about a favorable result to one class of taxpayers over another. As to the alleged failure on the part of the taxing officials to tax all property not exempt from taxation, the evidence tends to show that certain classes of property were not taxed, but this was not on account of officials desiring to omit the same from taxation, but more on account of the fact that, owing to the nature of the property, it was impossible to secure sufficient evidence of its existence to justify its listing for taxation purposes. The statements in the reports to the state board, if relied upon by plaintiff, in regard to the escape of property from taxation, justifies only the conclusion, which nearly every one knows, that it is practically impossible under the present system of taxation to effect the listing of all property. The evidence presented does not therefore justify the granting of relief to the plaintiff upon this ground, in the face of a fair showing that reasonable and honest effort was made to fairly and honestly tax property and to secure the return of all property for taxation which is legally taxable.

Recapitulating, the conclusions of the court are, that the plaintiff is entitled to relief upon the basis of the erroneous inclusion of the track mileage percentage as a factor in determining the valuation of plaintiff's property in Wyoming; that is, its use as a factor in the manner in which it was here used without making proper allowances for the difference in proportionate values as existing in Wyoming in comparison with the property of plaintiff in other states. In fact, it is rather apparent that the mileage percentage basis under the circumstances in the case at bar would not be adapted to any method of determining value unless it were possible to equalize this factor before being used. With this factor eliminated together with the correction as to the apparent error in computing the factor of operating income, we have the following result:

Traffic Units .........................1.58
Rolling Stock ........................1.65
Operating Revenues ...................1.79
                                      ─────
    Total .........................5.02

■ This total divided by three as the average of the three factors, gives a result of 1.673 per cent., which as applied to the total valuation of plaintiff's property of $375,285,902 makes a valuation for the state of Wyoming of $6,278,534.14, or a reduction over the valuation used by the state board and certified to the taxing units of the several counties of $1,602,468.90, which latter amount, if the first reasoning be correct, represents a substantial overvaluation so as to entitle plaintiff to relief.

■ Inasmuch as it would seem to be the function of a court of equity to determine the entire matter before it with respect to securing equality as far as may be to the complaining taxpayer (Greene v. Louisville & Interurban R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88), the finding of this court will be that the state board of equalization, by adopting the mileage percentage as a factor in the determination of the value of plaintiff's property in Wyoming, used an erroneous, improper, unequal, and arbitrary basis for its computation, and that the value of said property by the use of all the legitimate factors which have been presented to the court should be, as before stated, $6,278,534.14. The distribution of this amount in values among the several counties of which the defendants are the representatives as tax collectors will be ratified and approved, the appropriate figures for which may be computed and carried into the decree. As to all taxes upon valuation exceeding the above amount, the defendants will be permanently restrained and enjoined from collecting the same, and, as to

all other taxes, the temporary injunction will be dissolved.

Findings, conclusion, and a decree may be prepared through collaboration of counsel and submitted to the court on or before December 5, 1932, awarding costs to the plaintiff and reserving proper exceptions to the parties.