ROWLEY, County Treasurer, et al. v. CHI-
CAGO & N. W. RY. CO.
No. 881.

Circuit Court of Appeals, Tenth Circuit.
Jan. 9, 1934.

Rehearing Denied Feb. 23, 1934.

James A. Greenwood, of Cheyenne, Wyo. (Ray E. Lee, Atty. Gen. of State of Wyoming, John J. McIntyre, of Douglas, Wyo., H. S. Harnsberger, of Lander, Wyo., George A. Weedell and Harold I. Bacheller, both of Casper, Wyo., and Thomas O. Miller, of Lusk, Wyo., on the brief), for appellants.

R. R. Rose, of Casper, Wyo. (W. T. Faricy, of Chicago, Ill., Vincent Mulvaney, of Casper, Wyo., and Wilfred O'Leary, of Cheyenne, Wyo., on the brief), for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and SYMES, District Judge.

BRATTON, Circuit Judge.

The Chicago & North Western Railway Company, a corporation organized under the laws of the state of Illinois, hereinafter called plaintiff, instituted this action against the respective treasurers of Converse, Fremont, Natrona, and Niobrara counties in Wyoming, hereinafter called defendants, to enjoin them from collecting the full amount of tax levied against its property for the year 1931.

Plaintiff alleged that it submitted a return of its property subject to tax, containing the information required by law; that thereafter the state board of equalization of Wyoming fixed the value of the property at $7,881,003.-94; that such sum was $2,031,433.94 in excess of the actual value; that for more than ten years preceding the institution of the suit, its property throughout the state had been intentionally and systematically valued much higher than that of other taxpayers; that during such period about 20 per cent. of the property throughout the state properly subject to tax had been omitted from the tax rolls; and that in consequence of such action plaintiff suffers a discrimination in violation of its rights under the Fourteenth Amendment to the Constitution of the United States, guaranteeing equal protection of the laws. It charged that the tax asserted by the four counties, computed on their respective allocations of such excessive valuation, is: Converse, $40,042.27; Fremont, $48,223.02; Natrona, $47,701.82; Niobrara, $32,639.01; that based upon a valuation uniform with that placed on property throughout the state, the tax due such counties would be: Converse, $24,025.37; Fremont, $28,933.81;

Natrona, $28,621.09; • Niobrara, $19,583.41; that it had tendered the counties one-half of the respective sums properly due and payable; that it stood ready and willing to pay such other amounts, if any, as and when the court should determine the same to be due and payable, and that unless prevented from doing so, the defendants would distrain and sell its property for the taxes thus illegally imposed.

Defendants challenged the jurisdiction of the court; they denied excessive valuation of plaintiff's property; they asserted that it was valued more than $4,000,000 under its actual value, and they denied the alleged discrimination.

Judgment was rendered, reducing the value of the property by $1,602,468.90; the tax was computed on the corrected value; the apportionment was made to the four counties; and defendants were enjoined from enforcing collection of any tax in excess of the amount thus determined to be due.

■ The first question presented for our consideration relates to the jurisdiction of the District Court to grant equitable relief. It is asserted that under relevant statutes of the state (quoted in note 1)[1] a plain and adequate

[1] Note 1.

"Actions to enjoin the illegal levy of taxes and assessments must be brought against the corporation or person for whose use and benefit the levy is made; and if the levy would go upon the tax list, the county treasurer must be joined in the action." Section 89-4202. Revised Statutes, 1931.

"Actions to enjoin the collection of taxes and assessments must be brought against the officer whose duty it is to collect the same; actions to recover back taxes and assessments must be brought against the officer who made the collection, or, if he is dead, against his personal representative; and when they were not collected on the tax list, the corporation which made the levy must be joined in the action; provided, that when the money derived from said taxes or assessments has been actually paid over to any county or municipal corporation for whose use and benefit it was levied or collected, then an action shall be brought against said county or municipal corporation to recover said taxes or assessments." Section 89-4203.

"In all cases where any person shall pay any tax, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to clerical errors or other errors, the board of county commissioners shall direct the treasurer to refund the same to the taxpayer, or, in case any real property subject to taxation, shall be sold for the payment of such erroneous tax, the error in tax may at any time be corrected as above provided, and shall not affect the validity of the sale, but such property shall be redeemed by the county as hereinafter set forth." Section 115-311.

"District courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof; but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected." Section 89-4201.

remedy at law is provided. The remedy is to pay the tax, submit to the board of county commissioners an application for its refund, and if that is denied, institute a suit in the District Court for its recovery. Recourse to equity cannot be had if there is a plain, adequate, complete, and efficient remedy at law. Section 384, title 28 USCA. Decisions so holding are without number.

■ The mere illegality of a tax is not sufficient to invoke the aid of a court of equity. In addition to that fact, there must be lack of a plain, adequate, complete, and efficient remedy at law. In order to be plain, adequate, complete, and efficient, the remedy, by its nature and character, must be adapted and suited to the accomplishment of the end in view. It is not adequate and complete if several suits would be required between the same parties involving identical issues of fact and law. In other words, equity may intervene where a multiplicity of suits at law would be necessary to determine the controversy and to accord parties the rights to which they are entitled. Obviously, four separate actions would be required here, one against the treasurer of each county. The issues of fact and law would be identical, but it is not improbable that different conclusions would be reached, thus injecting uncertainty, confusion, and delay into the situation. For that reason, the remedy at law is not adequate, complete, and efficient.

While federal courts should maintain a proper reluctance to interfere, through use of the writ of injunction or otherwise, with a sovereign state in the collection of its revenues, guided by the considerations enunciated in the settled adjudications in respect of the question, the trial court correctly entertained equitable jurisdiction. Union Pacific R. Co. v. Board of County Commissioners, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Wilson v. Ill. Southern Ry. Co., 263 U. S. 574, 44 S. Ct. 203, 68 L. Ed. 456; Chicago G. W. Ry. Co. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183; Pleasant v. Missouri-Kansas-Texas R. Co. (C. C. A. 10) 66 F.(2d) 842; Roadway Express, Inc., v. Murray (D. C.) 60 F. (2d) 293; Atchison, T. & S. F. Ry. Co. v. Sullivan (C. C. A. 8) 173 F. 456.

The case of Mathews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, upon which defendants strongly rely, is not to the contrary. Plaintiffs there sued for themselves and others similarly situated to restrain the collection of a tax alleged to be void in that it imposed an unconstitutional burden on interstate commerce. It was held that the bill

529

failed to state a cause of action cognizable in equity because as to each party a single suit brought at law to recover the tax would determine the constitutionality of such tax; that no facts were alleged showing the necessity for more than one suit; that the alleged unconstitutionality of the law depended upon its application to each of the appellees attended by different business conditions, and in that way presented separate issues of fact and law. The situation is different here. There is an identity of issues, both fact and law. They can be determined in one equitable proceeding, while, as previously suggested, at least four different actions at law would be required with possible divergence of conclusions. Stratton v. St. L. S. W. R. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465, also stressed by defendants, unlike this case, did not necessitate a multiplicity of suits to recover the tax involved.

We turn now to the other question involved. Plaintiff operates a railway system in the states of Illinois, Iowa, Michigan, Minnesota, Nebraska, North Dakota, South Dakota, Wisconsin, and Wyoming. In fixing the taxable value of property in Wyoming, the state board of equalization considered and used four factors, namely: Traffic units, 1.58 per cent.; rolling stock, 1.65 per cent.; operating revenue, a composite figure between gross and net, 1.89 per cent.—admittedly erroneous, the correct figure concededly being 1.79 per cent.—and track mileage, 3.29 per cent. Each factor represented the proportion the part in Wyoming bore to the entire system. These sums were added, the total divided by four, and that average was the measure finally adopted. The parties agree that the first three factors were correct. No dispute arises from their use. The controversy relates to the fourth. The first three total 5.02 per cent., and their average is 1.673 per cent. Their use, with the fourth eliminated, would result in a valuation of $6,278,534.14. The same method of computation, including the fourth, resulted in valuing the property at $7,881,003.94, thus making a difference of $1,602,468.90.

The court found that the railroad system embraces 8,180.20 miles of main line track of which 278.35 miles are located in Wyoming; that the quality, cost, and value of such property within that state, measured by main line track, is greatly less than that throughout the system. That finding is sustained by substantial evidence. Conditions throughout the system are not substantially uniform. They differ widely. The company owns costly grade separations in Chicago, generally known as track elevations raising the main line grade twelve or fifteen feet above the street level to permit traffic in the streets without interruption. There are no such elevations in Wyoming. It has stone ballast in other states. There is none in Wyoming. Its bridges in some of the other states are of the expensive stone or stone arch type, while most of those in Wyoming are temporary in character, called pile trestles. Its station facilities in other states, particularly in Illinois, are extensive in capacity and expensive in character. Except for three or four, those in Wyoming are of temporary construction, some being car bodies and platforms. With a few exceptions, the rails used for yard and side track purposes in Wyoming are substantially lighter in weight, and consequently less in value, than those used in other states, notably Illinois, Wisconsin, and Iowa. These differences are substantial. There is lack of uniformity in conditions throughout the system.

The so-called track mileage method of fixing value of railroad property for tax purposes, that is to say, ascertaining and fixing the figure which bears the same ratio to the value of the entire system that the miles of track in the state bear to the total mileage of the system, both within and without the state, is an approved method where conditions are fairly uniform throughout the system. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Cleveland, etc., Railway Co. v. Backus, 154 U. S. 439, 14 S. Ct. 1122, 38 L. Ed. 1041; American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 19 S. Ct. 599, 43 L. Ed. 899; Atchison, T. & S. F. Ry. Co. v. Sullivan, supra. But that method obviously is arbitrary and unreasonable and cannot be sustained if conditions within and without the state vary substantially or differ widely. Its application in such circumstances results in taxing property outside the state under a mere pretense. Pittsburgh, etc., Railway Co. v. Backus, 154 U. S. 421, 14 S. Ct. 1114, 38 L. Ed. 1031; Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 16 S. Ct. 1054, 41 L. Ed. 49; Fargo v. Hart, 193 U. S. 490, 24 S. Ct. 498, 48 L. Ed. 761; Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782.

In view of the court's finding that the parts of the system within and without the state are not fairly uniform, but differ widely, and that finding being supported by substantial and virtually uncontroverted testimony, the use of the track mileage factor, without making allowance for such differences, was an arbitrary and unreasonable method in

fixing the value of the property within the state. It not merely effected an excessive value with a consequent injustice; its effect was to tax property without the state. It amounted to fraud in law, although members of the board of equalization acted without fraudulent or other improper motive. That cannot be upheld. Defendants undertake to sustain the assessment with the argument that the other factors were proper. That fact cannot save them, because it merely reduces the quantum of vice. It still exists. It is plain and by mathematical calculation it can be determined that its presence increased the value placed on plaintiff's property $1,602,468.90. The court correctly reduced the value by that amount, computed the tax on the corrected sum, made the apportionment thereof to the four counties and restrained the collection of any sum in excess of that amount.

Accordingly, the judgment is affirmed.

SYMES, District Judge (dissenting).

I regret I am unable to agree with the court on the one question of jurisdiction. The bill of complaint simply discloses a dispute as to the proper method of arriving at the value of plaintiff's property. The most that can be said is that the method adopted by the state board of equalization was illegal. True, fraud and systematic undervaluation of other classes of property are charged, but are wholly unsupported by the evidence, and were properly found to be without merit. No facts are shown to support the conclusion pleaded, that no plain, speedy, or adequate remedy at law exists, or that great and irreparable loss will be suffered. It is not alleged that plaintiff has tested or exhausted the legal remedies available under the state statutes, or that a multiplicity of suits are probable or possible.

Two recent cases in the United States Supreme Court, Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 219, 76 L. Ed. 447, and Stratton v. St. Louis Southwestern Railway Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465, are decisive. In the former Justice Stone says: "The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States." And further, that if there is an adequate remedy at law, it must be pursued. He then examines the law of the state involved (Mississippi), and finds that there is a plain remedy afforded by the applicable statutes of the state.

The Stratton Case, supra (coming up from Illinois), involves the same question. The court finds the existence of a right to recover the tax if illegal or inequitable, and refuses relief, saying, page 534 of 284 U. S., 52 S. Ct. 222, 223: "There being a legal remedy for the recovery of the tax, no case is made for invoking the jurisdiction of equity to enjoin collection of it, in the absence of allegations setting up special circumstances which would render the legal remedy inadequate." These very late cases show the tendency of that court to narrow the grounds of federal jurisdiction in cases of this nature.

Section 115-311, Rev. St. Wyo. 1931, makes it the duty of the county commissioners to direct the treasurer to refund erroneous or illegal taxes without suit, and section 89-4201, Rev. St. Wyo. 1931, gives the aggrieved taxpayer a right of action to enjoin an illegal levy or assessment, or to recover back taxes wrongfully exacted or paid. As simple a method as could be asked. See Carton v. Board of Commissioners, 10 Wyo. 416, 69 P. 1013. The good faith of the state officers will be presumed. Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154. So we have a situation where the most that can be contended by the railroad is that the board of equalization made an honest mistake in valuing the plaintiff's property. This does not amount to discrimination. Sunday Lake Iron Co. v. Wakefield, supra.

Among the cases cited by appellee is Union Pacific R. R. Co. v. Board of Com'rs of Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110. Justice Van Devanter wrote the opinion in that case and in Singer Sewing Mach. Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288. Both arose in Colorado. In the earlier case, Singer Sewing Mach. Co. v. Benedict, supra, he observed that the revenue laws of Colorado contained a section imposing upon the county commissioners in all cases the duty of refunding to the taxpayer without abatement or discount, any tax interest or costs or any portion thereof, which is found to be erroneous or illegal, and that this by necessary implication, confers upon the taxpayer a correlative and substantive right to have the same so refund-

ed. That this constituted an adequate remedy at law, and therefore relief by injunction was not admissible. Later, when Union Pacific R. R. Co. v. Board of Com'rs of Weld County, supra, came up to the Supreme Court, he found a new statute, the effect of which had not yet been determined by the state Supreme Court, and which might be construed as prohibiting the commissioners from refunding illegal taxes without the approval of the state tax commission, and as withdrawing the right of action referred to; that, therefore, the existence of an adequate remedy at law was uncertain and debatable, and equitable jurisdiction and an injunction could not be properly declined.

When we consider the similar Wyoming statute, the simple and complete remedy it affords, and the decisions of the state court, it would seem the Singer Sewing Mach. Co. Case, supra, and not the Union Pacific Co. Case, supra, is the authority applicable to the facts here. The distinction is clearly pointed out in Greene v. Louisville & I. R. R. Co., 244 U. S. 499, at page 519, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

Section 384, tit. 28 USCA (Rev. St. § 723, now Jud. Code § 267), forbids suits in equity, where a plain, adequate, and complete remedy exists at law. Justice Stone in Matthews v. Rodgers, supra, says this applies with peculiar force to suits in the federal court to enjoin collection of a state tax. Admittedly, the only possible ground for plaintiff coming here is the fear that it will have to bring a separate suit against each of the four counties involved.

Pacific Exp. Co. v. Seibert (C. C.) 44 F. 310, 312 (an old case in the Western District of Missouri), affirmed 142 U. S. 339, 12 S. Ct. 250, 35 L. Ed. 1035, involved a state tax alleged to violate the Federal Constitution. A penalty of $100 a day for each day's delay in payment was provided, recoverable in separate actions. Judge Caldwell, speaking for himself and Judge Philips, said: "A very clear case must be made out before a federal court will enjoin the collection of a state tax. * * * It must also appear that its collection will be attended with a multiplicity of suits, or the destruction of a franchise, or cast a cloud upon the title to real estate, or some other recognized head of equity jurisdiction must be shown." And in speaking of a multiplicity of suits, he said, page 315 of 44 F.: "It is real and not imaginary suits, it is probable and not possible danger of multiplicity of suits, that will warrant the assumption of

jurisdiction on that ground. While it is true, as the plaintiff contends, that the state might bring a separate suit for each day's penalty, the court would hardly be justified in acting on the assumption that it would do so. The state is not to be looked upon in the light of a barrator, and the court will not impute to it, or to its officers acting for and in its name a litigious or vindictive spirit, or a purpose needlessly to vex and harass the citizen with lawsuits * * * and, until the fact is shown to be otherwise, will act on the assumption that a state will not bring any more suits than are fairly necessary to establish and maintain its rights."

In Equitable Guarantee & Trust Co. v. Donahoe, 8 Del. Ch. 422, 45 A. 583, 585, the Chancery Court of Delaware, under a state statute similar to the federal statute, supra, had our question before it. The chancellor, after discussing the origin of this branch of equity jurisdiction, says: "Is there imminent and threatened a multiplicity of suits of such a nature and between such parties as to satisfy the court that the legal remedies are not sufficient?" And approves the quotation from the Pacific Exp. Co. Case, supra.

In an old case in Massachusetts, Fellows v. Spaulding, 141 Mass. 89, 6 N. E. 548, the court was urged to take jurisdiction to prevent a multiplicity of suits, in each of which the same question of law would be present, but declined, saying there is no reason why one suit, the others being continued to abide the result, should not settle all the cases.

In Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 286, 29 S. Ct. 426, 430, 53 L. Ed. 796, the Supreme Court says it has refrained from interfering in all cases where the federal rights of the persons could be preserved unimpaired, and discussing the question of multiplicity of suits says: "Where the multiplicity of suits to be feared consists in repetitions of suits by the same person against the plaintiff for causes of action arising out of the same facts and legal principles, a court of equity ought not to interfere upon that ground unless it is clearly necessary to protect the plaintiff from continued and vexatious litigation." And: "Perhaps it might be necessary to await the final decision of one action at law." Citing cases.

And Corpus Juris, vol. 21, p. 74, says: "While the prevention of a multiplicity of suits is an independent and substantive ground of equity jurisdiction and not merely a makeweight where other equities are present, it does not alone create a cause of

action where none otherwise exists." The subject is also discussed by Pomeroy (4th Ed.) vol. 1, beginning at § 243.

In Wilson v. Ill. So. Ry., 263 U. S. 574, 44 S. Ct. 203, 204, 68 L. Ed. 456 (also cited by appellee), federal jurisdiction was sustained, not only because a multiplicity of suits against the taxing bodies would result, "but there would be insuperable difficulty in determining what the proper assessment against the whole road should be and in apportioning the due share to the county concerned. This difficulty would recur in each of the five counties with not improbably different results in each." Therefore there was no adequate remedy at law.

In the case at bar no such allegations are made, and, as pointed out, the assessment is fixed by one body; there is authority to repay the tax, if illegal, without a suit, which we assume the proper officials would do. In addition the taxpayer has a right of action to enjoin or recover.

Keokuk Bridge Co. v. Salm, 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496, was a suit by a private property holder, and the only question was overvaluation. The Supreme Court denied jurisdiction because the remedy afforded by the state statute had not been availed of.

The authorities are, of course, too numerous to mention. In all, the Supreme Court after observing that it is only in extreme cases that the federal court will enjoin the collection of a state tax, proceeds to inquire whether, under the remedy afforded the aggrieved taxpayer, the question can be clearly presented and speedily determined, either in a court of law by an administrative body, or both. If it can jurisdiction is declined. The mere fact that there may be a possibility, as distinguished from a probability of more than one action being required, does not alter the rule.

Following appellee's argument to its logical conclusion, appellee could have its tax controversies passed upon by the federal court merely because its railroad ran through four counties in Wyoming, while another railroad with the same grievance, whose line traversed only one county of the same state would be denied federal jurisdiction. Federal jurisdiction does not depend upon any such fortuitous circumstance.

The method of valuation adopted was il-

legal and should be condemned. I doubt, however, the right of the court to determine the method to be followed in arriving at a valuation, or in actually fixing the figure. This is an administrative and not a judicial function. The Constitution of Wyoming, art. 15, § 11, provides that all property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the Legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property real and personal and, admittedly, an honest but mistaken effort to do this was made. It is still the duty of the board to make the valuation and, according to the authorities, they can use the rejected mileage basis as a factor, if proper allowance is made for the difference in value between a mile of track in Wyoming, and that of other parts of the system; or the board may adopt a method other than that adopted by the lower court, provided it secures a just valuation.

Pleasant et al v. Missouri-Kansas-Texas R. Co., 66 F.(2d) 842 (C. C. A. 10th), was a suit to enjoin collection of state taxes. It was held that courts do not supervise the actions of assessing bodies, or sit to correct their errors of judgment.

The State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663, is a leading case. Justice Miller there says that while they do not lay down any absolute limitation of the power of a court of equity to restrain the collection of illegal taxes, that if the grievance can be remedied by a suit at law, either before or after the payment of taxes, a court of equity will not interpose by injunction to stay collection of the tax (page 614 of 92 U. S.); and goes on to say that the court has no power to apportion the tax, to make another assessment, or to direct another to be made by the proper officers; that these officers, and the manner in which they exercise their functions, are wholly beyond the power of the court. And further on: That while a court of equity may enjoin a tax complained of in whole or in part, it has not the power of doing complete justice by making, or causing to be made a new assessment on any principle it may decide to be the right one.

See, also, Ex parte State of Oklahoma, 37 F.(2d) 862 (C. C. A. 10th).

It would therefore seem that under the rule of the Stratton Case, supra, no special circumstances are shown that render the legal remedy inadequate.