JOHNSON, Judge.
This is an appeal from final summary judgments which were entered in the same primary case, but applicable to separate counts of the complaint and several months in-between in rendition.
The respective counsel for the parties of this lawsuit have done a good job of prosecution, and the trial court necessarily spent much time and effort in analyzing the issues and applying the law to the facts, but we cannot agree with the contentions of appellees’ counsel, nor with the conclusions of the trial court.
We need to summarize briefly the subject of the tax in question — and also summarize briefly the history of the law applicable :
(1) The subject of the tax is the “rolling stock” of the appellant, a private car line, which has no tracks or lines or fixed real or tangible property in Florida.
(2) Did the law of Florida authorize the imposition of the subject taxes for the year 1971 by the Department of Revenue of Florida, and if it did, was the evidence sufficient to sustain the tax assessed — or was it too much?
As to the rolling stock, the appellant, a New York corporation, owned tank, refrigerator and other specialized cars which it furnished to customers and certain railroads for use in transporting various commodities throughout the United States including Florida. None of the cars were permanently located within Florida. Appellant did not own other real or personal property located in Florida and did not maintain a place of business in Florida.
For many years, prior to January 1, 1971, the old Florida Railroad Assessment Board had levied an almost nominal tax against the appellant and the same was paid without contest, either as to the legality of the tax or the amount thereof. In fact the assessment for 1970 was in the *48 amount of $305,182.00, as compared to the assessment for 1971, fixed by the Department at $5,089,488.00. This change within one year in the assessment of over 1700% of the previous year’s assessment brought about this lawsuit, since no relief could be obtained from the Board of Administration. In its final summary judgment on Count II of the complaint, the trial court did cut the assessment about in half, but we think, as shown hereinbelow, this was still illegal taxation.
The Florida Railroad Assessment Board was authorized to centrally assess railroad companies’ property. A reading of the law creating this Board makes it clear that the assessing was limited to resident railroad companies. There was no effort made to tax individual cars or tanks of non-resident railroad companies. In fact, from the depositions in the record taken from agents of the Department of Revenue, no tax is even now levied on the box cars of non-resident railroad companies. And while counsel for appellant has used this last statement of fact to bolster its contention that the tax in question was discriminatory, we also view it as a means of determining legislative intent.
The Florida Legislature, by Chapter 69-106, which became effective July 1, 1969, created a Department of Revenue — Chapter 69-106, section 21, and by subsection (7) the Railroad Assessment Board, created under Chapter 195, Florida Statutes, was transferred by a type three (3) transfer to the Department of Revenue. The type three (3) transfer referred to supra is described in Section 6, Chapter 69-106, which says that by such a transfer all the statutory powers, duties and functions shall be so transferred to the department (meaning the principal administrative unit within the executive branch of state government) and the board from which such powers, duties, etc., are transferred “is abolished.”
Chapter 69-55, Acts of Florida Legislature, was filed in the Office of Secretary of State on June 5, 1969. By this latter Act, the former numbers in the Florida Statutes of Sections 195.001 and 195.01, were changed to Sections 193.521 and 193.-531, Florida Statutes 1969, and apparently carried forward in the 1969 computation. A footnote at the end of Sections 193.521 and 193.531, Florida Statutes 1969, contains an Editor’s Comment to this effect: “§ 21, Ch. 69-106 abolishes the board and transfers its powers, duties and functions to the department of revenue. This section will be repealed by subsequent reviser’s bill.”
Section 193.531, F.S.1969, provided for an annual return by railroad companies, in subsection (1); subsection (2) of § 193.531 provided for assessment of such railroad properties by the “department of revenue,” if the return provided for in subsection (1) supra, was not filed by the first Monday of April.
These last two Sections of 1969 Florida Statutes, 193.521 and 193.531, provided the only authority and method whereby railroad properties could be assessed, and, as said supra, were carried forward in the 1969 Florida Statutes by Chapter 69-55, filed June 5, 1969. But, the same legislature by Chapter 69-106, filed June 19, 1969, Section 21, created the Department of Revenue. Section 193.531(2) and (3) provides for the Department of Revenue to assess the railroad properties, and for apportioning by the Department pro rata to each mile of main track, branch, switch, spur track and side track. This therefore fixed the amounts of assessments of railroad properties by using the main tracks to get the approximate pro rata of valuations. We can agree with this method of prorating, and also with the Department making the assessment, but said Sections 193.521 and 193.531, Florida Statutes, were repealed by the Legislature by Chapter 70-243 which Chapter was filed in the Office of the Secretary of State on June 30, 1970, and we do not find any substitution for the repealed methods and taxes provided in said two sections. We now wonder if Chapter 70-243 repeals the only authority *49 of the Department to levy taxes on any railroad property ?
Section 192.011, F.S.1971 provides that the tax assessor shall assess all property located within his county (Ch. 70-243(2)).
Section 192.032, F.S.1971, Subsection (2) provides the situs for tangible personal property for assessment purposes, to wit: that it shall be assessed in the county and municipality in which it is permanently located on January 1, or if brought into the state after January 1 and before April 1, shall be considered to have been in the state on January 1. No mention of railroad or railroad cars is made in the last two cited sections of the Florida Statutes.
The next statutory provision pertaining to railroad companies’ property is found in Section 193.052(6): “The department shall promulgate the necessary regulations to insure that all railroad and utility property is properly returned in the appropriate county.” And the next mention is in Section 193.085, F.S.1971 at subsection (4) : “The department shall promulgate such regulations as are necessary to insure that all railroad and utility property of all types is properly listed in the appropriate county.”
These last two sections of the 1971 Florida Statutes only authorize the promulgation of rules and regulations to see that “railroad” property is “returned” and “listed” in the appropriate county. This does not expressly nor impliedly authorize the levying or assessing of any tax, therefore, we must look elsewhere for authority to assess tangible personal property. We then go to Section 192.011, F.S.1971 for authority to assess, wherein it is said the assessor shall assess all property in his county, and to Section 192.032, F.S.1971, as to the situs of the tangible personal property for assessment purposes.
The trial court has stated that' by considering Sections 193.052(6) and 193.085(4), F.S., in pari materia with Section 192.032, F.S., the express authority for assessing the appellant’s property could be assumed or implied. Taxing and assessment of property therefor can be only under express authority. Oftentimes in the legislative process, in the hurry which is always present after the first 30 days of the session, bills are passed without waiting for the necessary implementation necessary to make the purpose of the bill effective, such as revisor’s bills. Elapse of time between the passage of the bill and the implementing rules or regulations creates the hiatus that halts the wheels of that particular phase of state government. The passage of Chapter 70-243 without the Department of Revenue implementing it by the necessary rules and regulations is what seems to have occurred here. It is like holding that the Department has full authority, but is being faced with a full injunction against using the authority.' We think further legislation is necessary to correct this situation, if it has not already been done.
We can agree that Chapter 69-106, Acts of the Legislature, did abolish the old Railroad Assessment Board and did transfer the duties and powers thereof to the Department of Revenue. The 1969 Florida Statutes contained Section 193.531 wherein it was provided that the railroad companies would make returns of the railroad properties by April 1 of each year. It is also provided, inter alia, that said railroad companies would state in its returns the number of miles of track state wide and county wide, which mileage of track would be the guide for assessing the appropriate portion of the railroad companies to each county. But Section 193.531 was repealed by Chapter 70-243, and no new rule was promulgated until after April 1, 1971. Therefore, if we look to Section 193.531, F.S.1971, the appellant could not have legally made a return even if it was thought necessary. Counsel for appellees are taking an untenable and even inconsistent position with reference to “where”, as shown in appellees’ brief, “when and by whom” the assessments were to be made, i.e., § 193.531, F.S.1969. This section of the Florida Stat *50 utes had been repealed and could no longer be used in taxing.
The only guideline for assessing railroad properties, either by the old Railroad Assessment Board or the new Department of Revenue, was tied to the miles of track. There was a hiatus in the law of Florida existing from the time that Chapter 70-243, Acts of the Legislature, took effect and until new rules were promulgated by the Department, which was not done until April 17, 1971. We do not agree that the properties of the appellant in this case were taxable under these circumstances, even had the rule been timely promulgated by the Department as was required by Chapter 70-243.
We need to pause at this point in our discussion of the law applicable, and turn to the facts as shown in the record-on-appeal, via the depositions of the, at that time “Chief of the Ad Valorem Tax Bureau, the Department of Revenue,” a Mr. Roach and that of the “appraiser supervisor with the Property Assessment Bureau of the Department of Revenue,” a Mr. Catts. In these two depositions it can be seen that the Department of Revenue had not, prior to 1971 nor in 1971, ever assessed railroad cars of non-resident railroad companies; the very method of assessing railroad properties precluded assessing non-resident railroad companies.
We think it will serve best to emphasize the testimony of these two agents of the Department of Revenue:
See pages 35 and 36 of the deposition of Steven J. Roach, Chief of the Ad Valorem Tax Bureau, the Department of Revenue, as follows:
“Q. Isn’t it a fact, Mr. Roach, that the railroad companies that you have enumerated have fixed tract located in the State of Florida.
A. Yes, sir.
Q. Isn’t that the basis of your determination of who gets assessed and who doesn’t whether the railroad company owns track ?
A. Yes.
Q. That is, permanent fixed assets in Florida ?
A. Yes.
Q. And the Illinois Central and those other railroads, would not have those fixed assets within the State, would they?
A. True.
Q. So that their rolling stock is not assessed as against them ?
A. In Florida, no.
Q. Now, Mr. Roach, do you know whether the railroads that are subject to tax in Florida derive income from private car companies, or rolling stock of private car companies ?
A. Well, to absolutely know the answer is no, that I don’t know.
Q. Do you know whether the railroads that are subject to taxation by the State of Florida derive income from the use of cars from other railroads that are not subject to tax in Florida?
A. No, sir.”
Also from the deposition of Mr. Hugh W. Catts, who described himself as “appraiser supervisor with the Property Assessment Bureau of the Department of Revenue” in Tallahassee, we need to quote the questions and answers:
“Q. You are using railroad property in a special sense. What I am asking you, Mr. Catts, is this. Does the Illinois Central Railroad have cars present in the State of Florida?
A. Yes, I assume that they do. »
Q. Do you make any determination as to whether or not this railroad company has cars in Florida ?
*51 A. No, sir.
Q. Do you send them a return which they are supposed to send in and return to you?
A. No, sir.
Q. Then you limit your returns to the eleven railroad companies ?
A. Yes.
Q. Now, would you explain to me why you have selected only those eleven railroads ?
A. Because they are the ones with real estate in the State of Florida.
Q. So the determination of whether a railroad company pays taxes is based directly upon the determination of whether or not it owns real estate and fixed assets in the State of Florida ?
A. That’s right.”
The Department of Revenue did on April 17, 1971 promulgate Rule 12B-1.05 (FAC), 12B-1.06(2) (FAC) and Rule 12B-1.10 (FAC):
“Rule 12B-1.05 (F.A.C.) provides: Annual Return of Private Car Lines and Equipment Companies. It shall he the duty of all private car line and equipment companies to return on or before the first of April annually, a report verified by an officer of the corporation in such form as the Department may prescribe, showing such of the following facts as may be requested by the Department, and such other information as the Department may require in the form and at the time prescribed by it: (1) History and corporate information (2) Name and address of principal officers (3) Car description and cost data including: (a) year acquired (b) car identification number and initials (c) type of car (d) number cars owned and leased (e) original cost (f) depreciation (g) book value (h) miles traveled everywhere loaded and empty (i) miles traveled in Florida load and empty * * * General Authority 193.052(6), 193.085(4), F.S., Law Implemented 193.052(6), 193.085(4), F.S.
“Rule 12B-1.06(2) (F.A.C.) provides: The Department shall examine the returns required by these regulations for private car line and equipment companies and such other information as the Department may obtain and after April 1 of each year, shall determine the just value of the property of .the private car line and equipment companies using the depreciated value of such property, with consideration given for physical and functional obsolescence; and shall assess at just value that portion of the private car line and equipment companies’ property allocable to Florida based on the comparison of miles traveled ‘everywhere’ to miles traveled in Florida. General Authority 192.052(6), 193.-085(4), F.S. Law Implemented 193.-052(6), 193.085(4), F.S.
“Rule 12B-1.10 (F.A.C.) provides: Apportionment of Private Car Assessment. The Department shall specify the value of property of private car line and equipment companies to each county, prorated to the number of miles over which such cars are usually transported therein. General Authority 193.052(6), 193.085(4), F.S., Law Implemented 193.-052(6), 193.085(4), F.S.”
These two Rules claim authority therefor from Chapter 193.052(6) and Chapter 193.085(4), F.S., but these Rules place an unwarranted base in said statutes. We cannot read into the statutes any authority for assessing the non-resident railroad properties, and no where can the name of “private car line” be found in the statute. There is no “home base” — no si-tus of the private, non-resident cars. There are no tracks nor fixed tangible personal property. The cars of the appellant were in the same situation as the cars of the Illinois Central Railroad Company, which has many cars in Florida admittedly and that are not taxed, admittedly. It is *52 obvious that the guideline of taxing cars such as those of the appellant and the Illinois Central and any other non-resident railroads, is not existent under Florida’s law as it was in 1971, the subject tax year in this case.
The Rules 12B-1.05 and 12B-1.06(2) F. A.C. are without substance because they are not based on an applicable statute providing for authority.
Appellees place great emphasis on the case of American Refrigerator Transit Company v. Hall, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899 (1899) to sustain its position. We have perused this case with minuteness and are of the opinion that by reading the applicable Colorado State Statute, we must agree with the United States Court’s ruling; but the provisions of the Colorado Statute are so different and more conclusive than the Florida Statutes that this case is not applicable to the case sub judice.
We do not mean to say that by proper legislative enactment, the Department of Revenue cannot tax the properties of this appellant, but in so doing, we find it well to point out that taxes must be uniformly administered, and if the type of property of appellant is brought under the taxing authority, then all other non-resident railroad companies and their properties must be treated with similarity.
To summarize the holding of this Court in the case sub judice is to say: The Florida law does not authorize the tax in question and the precedent for the tax is lacking in that the Department of Revenue is systematically not taxing other non-resident railroad properties. This indicates to us that the legislative intent was to limit the taxing of railroad properties to those to which could be attached a situs, or method of locating a situs as by determining the miles of track in the state or county.
We find the final summary judgment as to Count I in error, and the same is Reversed.
Inasmuch as we have now found that the Department of Revenue was without statutory or legislative authority to tax the appellant’s property for the year 1971, the final summary judgment on the Count II must fall and be Reversed.
Reversed and the impounded taxes should be paid to the appellant. The costs of these proceedings are charged to the ap-pellees.
RAWLS, C. J., and MILLS, J., concur.