OVERTON, Justice.
The Department of Revenue appeals the decision of the First District Court of Appeal in Department of Revenue v. General American Transportation Corp., 504 So.2d 1259 (Fla. 1st DCA 1986), which held unconstitutional, as applied, the ad valorem taxation of private line railroad cars under section 193.085(4), Florida Statutes (1979). The district court also certified the following question as one of great public importance:
Is the assessment for ad valorem tax of private-line railcars, pursuant to section 193.085(4)(b), Florida Statutes (1979), unconstitutionally discriminatory in that the similarly situated rolling stock of nonresident railroads is not similarly assessed under chapter 193?
Id. at 1260. We have jurisdiction. Art. V, § 3(b)(1), (4), Fla. Const. We answer the certified question in the negative, reverse, and find the tax as applied is not discriminatory because the taxing scheme allows fair taxation of all railroad cars by sovereign states and avoids double taxation.
At the outset, it should be explained that the respondents, as private carline corporations, are in the business of leasing private railroad cars to shippers. Private carlines own no railroad track and do not operate or own a railroad. Private carline corporations provide shippers with private railroad cars for a fee, and the shippers, in turn, engage the services of the railroad company to haul the cars. This is one of three sources of railroad cars for shippers. The shippers can also utilize railroad cars of resident railroads, a railroad which owns track in the state where the car is obtained, or, third, the shipper can use nonresident railroad cars, cars of a railroad that owns no track in the state where the railroad cars are used. In the latter two categories, the railroad cars are subject to taxation by the state where the owning railroad has track, based on a proportionate formula.
Florida’s ad valorem taxing scheme taxes private railcar owners to the extent their cars are used in Florida and taxes railroad cars of resident railroads, based on a formula that compares the amount of track in Florida to the total track owned by the railroad. Nonresident railroads are not taxed in Florida because their railroad cars retain tax situs in the states in which their parent railroad owns track. Section 193.-085(4)(b), Florida Statutes (1979), provides:
(b) 1. All private car and freight line and equipment companies operating rolling stock in Florida shall make an annual return to the Department of Revenue. The department shall make an annual determination of the average number of cars habitually present in Florida for each company and shall assess the just value thereof.
2. The department shall promulgate rules respecting the methods of determining the average number of cars habitually present in Florida, the form and content of returns, and such other rules as are necessary to ensure that the property of such companies is properly re *114 turned, valued, and apportioned to the state. .
3. For purposes of this paragraph, “operating rolling stock in Florida” means having ownership of rolling stock which enters Florida.
4. The department shall apportion the assessed value of such property to the local taxing jurisdiction based upon the number of track miles and the location of mainline track of the respective railroads over which the rolling stock has been operated in the preceding year in each taxing jurisdiction. The situs for taxation of such property shall be according to the apportionment.
The respondent carline companies challenge the tax assessments of their rolling stock for the tax years 1980 — 1984 on the grounds that the statutory scheme embodied in section 193.085(4)(b), Florida Statutes (1979), discriminates against private carline owners because rail cars owned by nonresident railroads are not taxed in Florida. Respondents argue that the rail cars of private carlines and the cars owned by nonresident railroads are identically situated because, like nonresident railroads, private carline companies own no track in Florida. Further, respondents assert that their shipper customers control the movements of the cars they lease and the shipper’s choice of Florida as an origin or destination advances no business purpose for the private carline companies. The trial court agreed and held that this statute
cannot constitutionally be applied so as to subject Plaintiffs’ rolling stock to assessment and taxation in Florida, so long as nonresident railroad rolling stock is not taxed here. This statute, standing alone, is not facially invalid; however, the absence of any provision — in Section 193.085 or elsewhere in Florida Statutes —which directs the taxation of nonresident railroad cars requires the Court to hold Section 193.085(4)(b) unconstitutional as applied to Plaintiffs, and to cancel the assessments in issue.
504 So.2d at 1260. The district court of appeal expressly affirmed this holding and certified the legal issue to this Court for resolution.
The Department of Revenue, in seeking to reverse this holding, emphasizes that under the railcar taxing scheme used in this country, Florida is not able to tax nonresident railroad cars which arrive in Florida through railroad interchanges because the cars do not acquire a tax situs in Florida. Instead, according to the Department of Revenue, these railroad cars retain tax situs in the states in which their parent railroads own track, based on the United States Supreme Court decision in Central Railroad Co. v. Pennsylvania, 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962).
We agree with the Department of Revenue and find that taxation of private line railcars used in this state does not violate the equal protection clause of either the United States Constitution or the Florida Constitution. Further, respondents, by their equal protection contentions, are not asking for equal tax treatment, but, in fact, are asking for a tax advantage over resident and nonresident railroads, which are subject to full taxation in the states where those railroads own track. Under the provisions of section 193.085(4), Florida Statutes (1979), the cars of resident railroads are taxed by the unit rule method, while private carline cars are taxed based on the number of cars habitually present in Florida. In making the latter determination, the department employs a ratio which compares the total miles which the company’s cars were hauled in Florida, against the total mileage accumulated by the cars nationwide. Fla.Admin.Code Rule 12D-2.-006(2). The fairness of these assessment methods, as well as their rationale, was explained by the Court of Appeals of Kentucky in Commonwealth v. Union Pacific Railroad Co., 214 Ky. 339, 283 S.W. 119 (1926):
In its practical workings, the distinction between the situs for taxation of the cars of the tank line and like companies and that of the cars of these foreign railroads we have thus pointed out, works no injustice and allows no property to escape from paying to some sovereignty its fair burden of taxation. As is conceded by the parties, almost every *115 state, if not all the states of the Union, has adopted the “unit rule” when it has come to tax the rolling stock of railroads owning or operating lines within its territory. As applied to rolling stock, the unit rule is this: So much of the entire rolling stock of the railroad is regarded as having a taxable situs in the state as is represented by the proportion found by taking the miles of lines of the railroad in the state and comparing them to the total miles of lines of such railroad. To illustrate: A railroad operates 4,000 miles of lines, 1,000 of which lie within the particular state. It has, say 20,000 cars. As one-fourth of its mileage is in such state, 5,000 of its cars are regarded as having a taxable situs there. In its generality, the unit rule of taxation as applied to railroads has been upheld by the Supreme Court (Ky. R.R. Tax Cases, 6 S.Ct. 57, 115 U.S. 321, 29 L.Ed. 414 [1885]), and, although it has in particular instances been disregarded where its practical workings is shown to result in injustice (Fargo v. Hart, 24 S.Ct. 498, 193 U.S. 490, 48 L.Ed. 761 [1904]; Davis, Director General, v. Wallace, 42 S.Ct. 164, 257 U.S. 478, 66 L.Ed. 325 [1922]), yet, unless such injustice be plainly shown, it will, if applied, be upheld. Under this rule, each car of the railroad is taxed once by some state in which the railroad runs. If the state fails to tax the cars of foreign roads found on domestic lines, yet it taxes the cars of domestic lines which are off on foreign roads, and, in the long run, the interchange of cars will, as a practical matter, bring about a balance between such numbers. If the cars of the domestic line acquire no taxable situs elsewhere than in the state or states where their owner is operating its lines, then they may be taxable in such state or states. New York Central R.R. v. Miller, supra [202 U.S. 584, 26 S.Ct. 714, 50 L.Ed. 1155 (1906)]. And they do not acquire such taxable situs elsewhere under the circumstances disclosed in this case, as we have seen.
On the other hand, tank line and like companies have no lines of road over which their cars run, so as to enable the state to apply the unit rule to them. If the cars be permanently absent from the domicile of their owner, they may not be taxed there. Union Refrigerator Transit Co. v. Kentucky, 26 S.Ct. 36, 199 U.S. 194, 50 L.Ed. 140, 4 Ann.Cas. 493 [1905]. But such companies are enjoying the protection of the states into which their property goes in the prosecution of the business and purposes of such companies, and, unless they pay their share of the burden of taxation there, they will escape all taxation. By requiring them to pay to the state on the average number of cars they there maintain, employ, and use in the prosecution of their business and purposes, we arrive at the same result as we do in the case of the railroads; that is, each car of the tank line and like companies pays to some state its share of the burden of taxes.
Id. at 348-350, 283 S.W. at 123.
Classifying property for tax purposes remains exclusively within the legislature’s inherent power. Campus Communications, Inc. v. Department of Revenue, 473 So.2d 1290 (Fla.1985); Belcher Oil Co. v. Dade County, 271 So.2d 118 (Fla.1972). The issue we must decide is whether there is an equal protection argument in the manner in which this tax is applied. While we agree with the private carline companies that their cars and nonresident railcars share some common features, they differ in one very important respect. Nonresident railroads have already paid, or are subject to pay, an ad valorem tax on the full value of their property to the state in which they own track. Assessment by Florida on such nonresident railroad cars would be double taxation and, in our view, prohibited by the majority opinion in Central Railroad Co. On the other hand, the private carlines do not pay any state a tax on the full value of their cars and pay only an apportioned tax on their cars to each state through which the cars pass, to the extent that other states choose to levy any tax whatsoever against private carlines. Private carlines and railroads compete in supplying cars to shippers, and what the private carlines are *116 asking by this lawsuit is a tax advantage based on the equal protection clause.
We have considered the First District Court of Appeal’s decision in General American Transportation Corp. v. Askew, 310 So.2d 46 (Fla. 1st DCA 1975), and find the suggestions to the legislature contained in that decision are not controlling and, to the extent they inferentially appear to conflict with this decision, they are rejected. We further disagree with respondents’ contentions that a railcar entering Florida advances no business purpose of the private carline corporations. The respondents are in business because Florida and other states have railroad tracks, switches, and terminals, constructed within their borders. When the respondents’ cars travel on track within our state, they clearly receive opportunities and benefits from Florida.
Accordingly, we reverse the decision of the district court of appeal and direct that the court remand to the trial court with instructions to reinstate the tax assessment under section 193.085(4)(b) for the years 1980 through 1984.
It is so ordered.
McDonald, C.J., and EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.